## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

RICHARD ALAN MCANULTY,

               Plaintiff

    v.

SUPT. VINCENT MOONEY, et al.,

               Defendants

CIVIL ACTION NO. 3:13-CV-03104

(CAPUTO, J.)
(MEHALCHICK, M.J.)

## REPORT AND RECOMMENDATION

On December 30, 2013, Plaintiff Richard Alan McAnulty, an inmate currently incarcerated at the State Correctional Institution in Coal Township, Pennsylvania filed this *pro se* civil rights action under 42 U.S.C. § 1983, alleging several violations of his federal constitutional rights under the Eighth and Fourteenth Amendments to the United States Constitution against eleven (11) Department of Corrections employees, the prison's contracted medical provider, and three (3) of its employees. Pending before this Court are Defendants' motions to dismiss filed on April 15, 2014; April 22, 2014; May 9, 2014; and December 30, 2014, respectively. (Doc. 24; Doc. 30; Doc. 37; Doc. 47). For the reasons stated herein, it is recommended that Defendants' motions dated April 15, 2014; April 22, 2014; and May 9, 2014 be granted (Doc. 24; Doc. 30; Doc. 37), Defendants' December 30, 2014, motion to dismiss for failure to prosecute be denied as moot (Doc. 47), and Plaintiff's claims be dismissed as to all named Defendants.

### I.   BACKGROUND

Plaintiff Richard Alan McAnulty initiated this § 1983 action by filing a *pro se* complaint on December 30, 2013. (Doc. 1). Plaintiff subsequently filed an amended complaint that the

Clerk of Court inadvertently docketed as a new civil action. *See McAnulty v. Mooney, et al.,* 3:14-CV-0622. On April 3, 2014, the Court directed the Clerk of Court to consolidate both actions, as both complaints involved common questions of law and fact. (Doc. 18).

In his amended complaint, Plaintiff primarily alleges that the Department of Corrections Defendants Vincent Mooney, David A. Varano, Michael Miller, Anthony Luscavage, Kathryn McCarty, Donna Dressler, Charles Custer, Trish Kelley, and D. Picarelli (the "DOC Defendants"); Defendant Wexford Health Network; and Defendants M. Landsberg, A.Popick, and J. Daya (the "Medical Defendants"), failed to provide proper medical care for his chronic and ongoing illnesses, including diabetes, high blood pressure, cervical pain, hearing loss, and fibromyalgia, in violation of the Eighth and Fourteenth Amendments. (Doc. 19). Specifically, Plaintiff challenges Defendants' failure to refill his prescriptions, schedule follow-up appointments, maintain accurate medical records, provide him with properly fitting diabetic shoes and socks, and transfer him to SCI-Laurel Highlands. (Doc. 19). Plaintiff also contests the refusal of Defendants to accommodate his non-medical requests, such as allowing him additional time in the law library, assisting him with locating a confiscated storage box containing legal materials, facilitating a conference call with the Department of Justice, and mailing various legal documents via certified mail. (Doc. 19).

On April 15, 2014, the DOC Defendants filed a motion to dismiss (Doc. 24), together with a brief in support of their motion. (Doc. 25). On April 22, 2014, Medical Defendant J. Daya filed a motion to dismiss (Doc. 30), together with a brief in support thereof. (Doc. 31). On May 9, 2014, Wexford Health Network and Medical Defendants M. Landsberg and A. Popick, filed a motion to dismiss (Doc. 37). They filed an accompanying brief in support of their motion

to dismiss on May 12, 2014. (Doc. 38). On December 30, 2014, Wexford Health Network and

Medical Defendants Landsberg and Popick filed a motion to dismiss for lack of prosecution.

(Doc. 47).[1] However, on January 14, 2015, Plaintiff filed a brief in opposition to the DOC

Defendants' motion to dismiss. (Doc. 49). On January 28, 2015, the DOC Defendants filed a

reply brief. (Doc. 50). To date, Plaintiff has not filed a response to Wexford Health Network's

or the Medical Defendants' motions to dismiss. (Doc. 30; Doc. 37).

## II.   MOTION TO DISMISS STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides that a complaint should be dismissed

for "failure to state a claim upon which relief can be granted." The United States Court of

Appeals for the Third Circuit has noted the evolving standards governing pleading practice in

federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years.
> Beginning with the Supreme Court's opinion in *Bell Atlantic Corp. v. Twombly,*

---

[1] In this motion, Defendants Landsberg, Popick, and Wexford Health Network seek dismissal of the instant action pursuant to Local Rule 7.6 and Rule 41(b) of the Federal Rules of Civil Procedure on the basis that Plaintiff neither responded to their May 9, 2014 motion to dismiss, nor submitted a motion for an extension of time to file a response. (Doc. 48). Rule 41(b) of the Federal Rules of Civil Procedure provides that "[i]f the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it." Fed.R.Civ.P. 41(b). However, upon review of the docket, it appears that Plaintiff has attempted to litigate his case, as Plaintiff filed a response to the DOC Defendants' motion to dismiss (Doc. 49), albeit untimely and not in response to Defendants Landsberg, Popick and Wexford Health Network's motion to dismiss. Moreover, "[d]ismissals with prejudice or defaults are drastic sanctions, termed 'extreme' by the Supreme Court, and are to be reserved for comparable cases." *Poulis v. State Farm Fire & Cas. Co.,* 747 F.2d 863, 868 (3d Cir.1984). Hence, the Court recommends denying this motion as moot. (Doc. 47). However, given Plaintiff's failure to respond to the Medical Defendants' and Wexford Health Network's motions to dismiss (Doc. 30; Doc. 37), this Court will deem their motions unopposed.

> 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), continuing with our opinion in *Phillips* [*v. County of Allegheny*, 515 F.3d 224 (3d Cir. 2008)]and culminating recently with the Supreme Court's decision in *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1955, 173 L. Ed. 2d 868 (2009), pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

> *Fowler v. UPMC Shadyside*, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all allegations in the complaint. All reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). Additionally, a court need not assume that a plaintiff can prove facts that the plaintiff has not alleged. *Associated Gen. Contractors of Cal. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). As the Supreme Court of the United States held in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), in order to state a valid cause of action a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In keeping with the principles of *Twombly*, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss. In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because

they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Following *Twombly* and *Iqbal*, a well-pleaded complaint must contain more than mere legal labels and conclusions. A complaint must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation.

Additionally, a document filed *pro se* is "to be liberally construed." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A *pro se* complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

When considering a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the court generally considers only the allegations contained in the complaint, exhibits attached to the complaint, and matters of public record. *Hynoski v. Columbia Cnty. Redevelopment Auth.*, 941 F. Supp. 2d 547, 555 (M.D. Pa. 2013); *reconsideration denied*, No. 4:10-CV-2222, 2013 WL 3863992 (M.D. Pa. July 24, 2013); see *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3rd Cir.1993) (public records have included dispositions of criminal cases, decisions of government agencies, and published reports of administrative bodies); Fed. R. Civ. P. 12(d). The court may also, however, take judicial notice of certain facts, as well as undisputedly authentic documents if the complainant's claims are based upon these documents. *Id.* (parties' purchase and sale agreement upon which complaint was based could be judicially noticed); *see*

*Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). A judicially noticed fact is one that is "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed.R.Evid. 201(b).[2]

## III.  DISCUSSION

### A.  DEPARTMENT OF CORRECTIONS DEFENDANTS

#### 1.  **Lack of Personal Involvement**

The amended complaint names Superintendent Vincent Mooney, Superintendent David A. Varano, Deputy Superintendent Michael Miller, Deputy Superintendent Anthony Luscavage, Unit Manager Charles Custer, Unit Manager Ms. Shaffer, Registered Nurse Supervisor Donna Dressler,[3] Health Care Administrator Kathryn McCarty,[4] and Grievance

---

[2] In addition to the amended complaint in this matter (Doc.19), the Court has considered various documents explicitly incorporated into the complaint by reference, including approximately 109 pages of exhibits attached to Plaintiff's original complaint (Doc. 1), as well as certain prison regulations that are matters of public record of which the Court may properly take judicial notice in ruling on a Rule 12(b)(6) motion. *See* Fed. R. Evid. 201; *Christman v. Skinner*, 468 F.2d 723, 726 (2d Cir. 1972); *Hodges v. Klein*, 421 F. Supp. 1224, 1233 (D.N.J. 1976), *aff'd*, 562 F.2d 276 (3d Cir. 1977) (per curiam); *see also Wakeley v. Giroux*, No. 1:12-CV-2610, 2014 WL 1515681, at *11 (M.D. Pa. Apr. 15, 2014) (taking judicial notice of applicable DOC policy). Consideration of these materials does not require conversion of this Rule 12(b)(6) motion into a Rule 56 motion for summary judgment. *See* Fed. R. Civ. P. 12(d); *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014).

[3] While Registered Nurse Supervisor Donna Dressler is authorized to dispense medications and initially assess inmate patients, her involvement in the instant action is limited to her responses to grievances submitted by Plaintiff. (Doc. 25, at 7).

Counselor Trish Kelley. Plaintiff appears to claim that these DOC Defendants are liable under the Eighth and Fourteenth Amendments for their failure to intervene or respond to his complaints of inadequate medical care, including his request to be transferred to SCI- Laurel Highlands. [5] Defendants have moved for the dismissal of all claims against these Defendants for lack of personal involvement in the alleged violations of Plaintiff's constitutional rights. (Doc. 25, at 9).

 "A defendant in a civil rights action 'must have personal involvement in the alleged wrongs to be liable,' and 'cannot be held responsible for a constitutional violation which he or she neither participated in nor approved.'" *Baraka v. McGreevey,* 481 F.3d 187, 210 (3d Cir. 2007) (internal citations omitted). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir. 1988). The filing of a grievance is not sufficient to show the actual

---

 [4] Health Care Administrator Kathryn McCarty is neither a prison doctor nor on the medical staff. (Doc. 25, at 7).

 [5] Plaintiff has also asserted that various Defendants violated his constitutional rights under the Eighth and Fourteenth Amendments by failing to accommodate several non-medical requests, such as scheduling a telephone conference with the Department of Justice, mailing his legal documents via certified mail, providing Plaintiff with the list of potential Defendants listed in this action, and assisting Plaintiff in recovering an "illegally confiscated record storage box and letters authorizing Plaintiff to possess storage boxes for his legal work." (Doc. 19, at 14). However, assuming *arguendo* that Plaintiff has adequately alleged personal involvement on behalf of these Defendants, these complaints nonetheless do not give rise to a constitutional violation. For further analysis regarding these claims, see infra at Part III. A.2; *see also, Lyons v. Sec'y of Dep't of Corr.*, 445 F. App'x 461, 463 (3d Cir. 2011).

knowledge required for personal involvement. Moreover, participation in the "after-the-fact" review of a grievance is not enough to establish personal involvement. *See, e.g., Brooks v. Beard,* 167 Fed. Appx. 923, 925 (3d Cir. 2006) (allegations that prison officials and administrators responded inappropriately to inmate's later-filed grievances do not establish the involvement of those officials and administrators in the underlying deprivation). *See also Cole v. Sobina,* 2007 WL 4460617 (W.D. Pa. Dec. 19, 2007); *Ramos v. Pa. Dep't of Corr.,* 2006 WL 2129148 (M.D. Pa. July 27, 2006); *Wilson v. Horn,* 971 F. Supp. 943, 947 (E.D. Pa. 1997), *aff'd,* 142 F.3d 430 (3d Cir.1998) (prison officials' failure to respond to inmate's grievance does not state a constitutional claim).

Further, this Court is guided by the well-established principle that inmates "do not have a constitutional right to a prison grievance system." *Arroyo v. Li,* No. 3:CV-13-1506, 2014 WL 4294506, at *3 (M.D. Pa. Aug. 28, 2014)(citing *Jones v. N.C. Prisoners Labor Union,* 433 U.S. 119, 137–38 (1977); *Speight v. Sims,* No. 08–2038, 2008 WL 2600723, at *1 (3d Cir. Jun 30, 2008)). Accordingly, "any attempt by [p]laintiff to establish liability against [a prison official or] health care administrator solely based upon the substance or lack of response to his institutional grievances does not by itself support a constitutional due process claim." *Id.* (citing *Alexander v. Gennarini,* 144 Fed. Appx. 924, 925 (3d Cir. 2005) (involvement in post-incident grievance process not a basis for § 1983 liability)); *Okey v. Strebig,* 531 F. App'x 212, 215 (3d Cir. 2013) *cert. denied,* 134 S. Ct. 446 (2013) ("The failure of a prison official to provide a favorable response to an inmate grievance is not a federal constitutional violation.") (citations omitted).

A review of the amended complaint reveals no facts alleging personal involvement by these prison officials and administrators in the allegedly unconstitutional conduct. Although the

amended complaint suggests that these DOC Defendants ignored or responded inappropriately to his request slips and grievances regarding his medical treatment,[6] such allegations do not establish personal involvement on the part of these Defendants or confer any substantive constitutional rights upon Plaintiff. Accordingly, as Plaintiff merely alleges that these Defendants violated his constitutional rights in their handling of his grievances and requests, he has failed to state a cognizable constitutional claim as against DOC Defendants Superintendent Vincent Mooney, Superintendent David A. Varano, Deputy Superintendent Michael Miller, Deputy Superintendent Anthony Luscavage, Unit Manager Charles Custer, Unit Manager Ms.

-----

[6] Even assuming *arguendo* that personal involvement has been properly alleged with respect to these DOC Defendants, Plaintiff has failed to demonstrate that Defendants were deliberately indifferent to his medical needs through their awareness of his medical conditions and their failure to secure him proper treatment. Indeed, if a prisoner is being treated by medical personnel, non-medical officials and healthcare administrators cannot be considered deliberately indifferent for failing to intervene in the medical treatment or respond directly to the prisoner's medical complaints. *See Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993) (Prison administrators cannot be deliberately indifferent "simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor"); *Gould v. Wetzel*, 547 Fed. Appx. 129, 132 (3d Cir. 2013). Hence, "[p]rison officials who are not physicians are entitled to defer to the medical judgment of staff physicians, . . . and an administrator does not become responsible for the inmate's medical treatment simply by virtue of reviewing an inmate grievance." *Smith v. O'Boyle*, 251 F. App'x 87, 89 (3d Cir. 2007). Accordingly, Plaintiff's Eighth Amendment deliberate indifference claim against Defendants Superintendent Vincent Mooney, Superintendent David A. Varano, Deputy Superintendent Michael Miller, Deputy Superintendent Anthony Luscavage, Unit Manager Charles Custer, Unit Manager Ms. Shaffer, Health Care Administrator Kathryn McCarty, Registered Nurse Supervisor Donna Dressler, and Grievance Counselor Trish Kelley cannot withstand a motion to dismiss.

Shaffer, Registered Nurse Supervisor Donna Dressler, Health Care Administrator Kathryn McCarty, and Grievance Counselor Trish Kelley.

### 2.   D. Picarelli

Plaintiff claims in his amended complaint that Defendant D. Picarelli violated his rights by failing to add a contact to Plaintiff's authorized visitor's list, ignoring requests to facilitate a telephone conference with the United States Department of Justice, and conducting conversations with other inmates about their release in the Plaintiff's presence. Defendants move for dismissal of this DOC Defendant from the instant action on the ground that these allegations do not give rise to a constitutional claim.

With respect to his claim that Defendant Picarelli refused to input a visitor, Alan Blose, to his authorized visiting list, the grievances referenced in his amended complaint and attached as exhibits to his original complaint reflect that Alan Blose could not be automatically added to the authorized visitor list due to his criminal background, and thus, superintendent authorization would be required pursuant to prison policy.[7] The response to Plaintiff's grievance indicates that authorization was approved on September 5, 2012, at which time Plaintiff was instructed to submit an updated visiting form. (Doc. 1, at 84). However, Plaintiff did not submit that form until December 3, 2012. (Doc. 1, at 83). Thus, any attempt by Alan Blose to visit prior to Plaintiff submitting the updated visiting form would have been properly restricted pending processing of the visiting form in accordance with prison policy. Moreover,

---

[7] *See* DC-ADM 812, Inmate Visiting Privileges, at 1-8 (Sept. 10, 2009), available at http://www.cor.pa.gov/Administration/General%20Information/Documents/DOC%20Policies/812%20Inmate%20Visiting%20Privileges.pdf.

to the extent Plaintiff's challenge could be construed as a First Amendment claim, such a claim is facially deficient, as "there is no absolute constitutional right to visitation." *Bell v. Holmes*, No. CIV. 13-6955 JBS, 2015 WL 851804, at *3 (D.N.J. Feb. 23, 2015)(citing *Kentucky Dept. of Corr. v. Thompson,* 490 U.S. 454, 460 (1989) (holding that there is no substantive due process right to "unfettered visitation")); *Neumeyer v. Beard,* 301 F. Supp. 2d 349, 351 (M.D. Pa. 2004), *aff'd,* 421 F.3d 210 (3d Cir.2005) (holding that convicted prisoners and their families and spouses have no "constitutional right to visitation" other than with legal counsel)). Here, Plaintiff has not alleged that he was barred from receiving visitiors, and in fact, the prison approved Alan Blose as an authorized visitor. Accordingly, Plaintiff's claim that Defendant Picarelli denied him visitation with his friend does not rise to the level of a constitutional violation warranting relief under § 1983.

Similarly, Plaintiff's allegation that Defendant Picarelli ignored his request to facilitate a telephone conference with the United States Department of Justice raises no issues of constitutional concern. Specifically, Plaintiff's First Amendment right to communication or association has not been impermissibly denied given that Defendant Picarelli has not restricted him from placing a call to the Department of Justice himself. Indeed, Plaintiff is free to call the Department of Justice so long as it conforms to the DOC's policy statement governing telephone privileges.[8] Moreover, Plaintiff retains alternative means of communicating with the

---

[8] *See* DC-ADM 818, Inmate Visiting Privileges, at 1-8 (April 25, 2012), available at http://www.cor.pa.gov/Administration/General%20Information/Documents/DOC%20Policies/818%20Automated%20Inmate%20Telephone%20System.pdf.

Department of Justice, such as through regular mail. Accordingly, the allegations present no violation of Plaintiff's constitutionally-or federally-protected rights.

Lastly, with respect to his claim that Defendant Picarelli conversed with inmates regarding their parole conditions and arrangements for their release in the presence of the Plaintiff, such conversations raise no privacy issues, as those conversations did not pertain to the Plaintiff. *See Doe v. Delie*, 257 F.3d 309, 316 (3d Cir. 2001) (holding that an inmate enjoys a right of privacy in his medical records). Hence, Defendant Picarelli's conduct does not raise issues of constitutional import.

### 3. C.O. Shultz

The only allegations directed at Defendant C.O. Shultz arise from an incident where Defendant Shultz was directed to test the prison's announcement system based on Plaintiff's complaints that he could not hear announcements due to his alleged hearing loss. He claims that Defendant Shultz "verbally abused and demeaned Plaintiff during that sound test." (Doc. 19, at 16). However, "[i]t is well established that verbal harassment or threats of the sort detailed above will not, without some reinforcing act accompanying them, state a constitutional claim." *Maclean v. Secor*, 876 F. Supp. 695, 698 (E.D. Pa. 1995); *Booth v. King*, 228 Fed. Appx. 167, 172 (3d Cir. 2007) ("[A]bsent any allegation of physical harm, the [defendant's] verbal threats do not amount to a constitutional violation.")(citing *Ivey v. Wilson,* 832 F.2d 950, 954–55 (6th Cir.1987) (holding that verbal abuse, alone, is not an Eighth Amendment violation)); *see also Balliet v. Whitmire,* 626 F. Supp. 219 (M.D. Pa.1986) (noting that use of profane and vulgar

language does not amount to a civil rights violation). Accordingly, this Court recommends dismissal of all claims against Defendant C.O. Shultz for failure to state a claim.

### B.  MEDICAL DEFENDANTS

Plaintiff alleges that Medical Defendants Doctor M. Landsberg, Doctor A. Popick, and Physician Assistant J. Daya were deliberately indifferent to his "chronic and ongoing geriatric illnesses," in violation of the Eighth Amendment and Fourteenth Amendment. (Doc. 19, at 5). Defendants seek dismissal of all claims against them on the basis that Plaintiff has failed to establish deliberate indifference to a serious medical need. (Doc. 31; Doc. 37).

As an initial matter, it appears that Plaintiff has attempted to raise a claim under the Eighth and Fourteenth Amendments based on the same conduct—namely, that Defendants were deliberately indifferent to Plaintiff's medical needs. "Because the Eighth Amendment provides an explicit source of protection for deliberate indifference to serious medical needs, Plaintiff's claim is preempted by the Eighth Amendment and should not be analyzed as a substantive due process claim under the Fourteenth Amendment." *Sadelmyer v. Peltzer*, No. 2: 12-CV-1785, 2013 WL 4766517, at *6 (W.D. Pa. Sept. 4, 2013). As Plaintiff's Fourteenth Amendment claim fails as a matter of law, this Court proceeds to whether Plaintiff has set forth a cognizable Eighth Amendment claim based on the alleged misconduct.

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain," which includes "deliberate indifference to serious medical needs of prisoners." *Dennis v. Jensen*, No. 10–1486, 2013 WL 2245144, at *3 (M.D. Pa. May 20, 2013) (quoting *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976)). Such a claim requires that a plaintiff allege "(i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." *Natale*

*v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003); *see also West v. Keve*, 571 F.2d 158, 161 (3d Cir. 1978)("This standard is two-pronged. It requires deliberate indifference on the part of prison officials and it requires the prisoner's medical needs to be serious.").

A serious medical need exists if failure to treat such condition would constitute a "denial of the minimal civilized measure of life's necessities." *Farmer v. Brennan*, 511 U.S. 824, 825 (1994).

> [T]he concept of a serious medical need . . . has two components, one relating to the consequences of a failure to treat and one relating to the obviousness of those consequences. The [inmate's] condition must be such that a failure to treat can be expected to lead to substantial and unnecessary suffering, injury, or death. Moreover, the condition must be 'one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention.'

*Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1023 (3d Cir. 1991) (quoting *Monmouth Cnt. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987)). Here, Plaintiff alleges that he suffers from "major cervical damage, fibromyalgia, high blood pressure, diabetes, hearing loss and chronic geriatric [illnesses]." (Doc. 1, at 15). This Court assumes for purposes of this analysis that Plaintiff has a serious medical need. Accordingly, the Court turns to whether these Defendants exhibited deliberate indifference towards his illnesses.

Deliberate indifference may be manifested by an "intentional refusal to provide medical care, [a] delayed medical treatment for non-medical reasons, a denial of prescribed medical treatment, or a denial of reasonable requests for treatment that results in suffering or risk of injury." *Beckett v. Dep't. of Corr.*, No. 10–0050, 2011 WL 4830787, at *11 (M.D. Pa. Oct.12, 2011). However, prison medical authorities are given considerable latitude in the diagnosis and treatment of inmate patients. *Inmates of Allegheny Cnty. Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir.

- 14 -

1979). "[M]ere allegations of malpractice do not raise issues of constitutional import." *Lanzaro*, 834 F.2d at 346. A mere difference of opinion between the prison medical staff and the inmate regarding the diagnosis or treatment received by the inmate does not constitute deliberate indifference. *Lanzaro*, 834 F.2d at 346; *Farmer v. Carlson*, 685 F. Supp. 1335, 1339 (M.D. Pa. 1988). Indeed, "[m]ere medical malpractice, negligence, and courses of treatment inconsistent with the desires of the prisoner . . . do not constitute deliberate indifference to serious medical needs." *Lopez v. Corr. Med. Servs., Inc.*, 499 Fed. Appx. 142, 146 (3d Cir. 2012) (citing *Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004)). A prison doctor's failure to perform additional diagnostic tests does not constitute cruel and unusual punishment. *See Estelle*, 429 U.S. at 107. The key question is whether the defendant has provided the inmate with some type of treatment, regardless of whether it is what the inmate desires. *Farmer*, 685 F. Supp. at 1339; *see e.g. Brown v. Borough of Chambersburg,* 903 F.2d 274, 278 (3d Cir.1990) ("[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights.").

### 1. Doctors Landsberg and Popick

Here, Plaintiff avers the following with respect to his deliberate indifferent claims against Doctors Landsberg and Popick:

> 46. On 6-6-13 Defendant Doctor M. Landsberg [f]ailed to properly reorder required chronic medications for the Plaintiff and [f]ailed to maintain truly updated medical records on Plaintiff. On 6-6-13 Defendant Landsberg [f]ailed to properly order a sixty day follow-up appointment to evaluate Plaintiff[']s [c]ondition.

> 47. On 6-30-13, 7-9-13 Defendant Doctor Popick failed to properly reorder required chronic mediations for Plaintiff[.] Defendant Popick also failed to maintain true updated medical records on Plaintiff. . . . Defendant Popick failed to properly schedule follow-up appointment to evaluate Plaintiff[']s condition.

(Doc. 19, at 12).

- 15 -

Plaintiff's claims that Defendants Landsberg and Popick failed to properly refill his chronic medications, schedule him for a follow-up appointment, and maintain up-to-date medical records, do not rise to the level of deliberate indifference, as these allegations are not supported by the grievances and request slips attached to Plaintiff's original complaint. (Doc. 19).

For example, Plaintiff claims that Defendants refused to provide him with prescription and over-the-counter medication refills. However, the grievances and request slips demonstrate that Defendants prescribed the requested medications to Plaintiff, and that Plaintiff was clearly aware of and yet failed to comply with the prison protocol requiring inmates to submit a request for specific chronic medication when fewer than seven pills remained in the prescription. (Doc. 1, at 36). Moreover, Plaintiff's allegations fail to show that these physicians "acted intentionally to withhold from him his prescribed medication[s] or [were] in any way responsible for the delay in obtaining a refill of his medication." *Baskerville v. Blot*, 224 F. Supp. 2d 723, 735 (S.D.N.Y. 2002). Accordingly, to the extent Plaintiff claims that Defendants were deliberately indifferent to his medical needs by failing to *automatically* prescribe chronic and over-the-counter refills in contravention to prison policy requiring Plaintiff to submit a sick call request for his chronic medications, such claims lack merit given Plaintiff's failure to comply with such instructions.

Plaintiff's allegations that he was deprived of medical care when Defendants failed to schedule him for a follow-up appointment also do not amount to deliberate indifference to a serious medical need when considering the amended complaint's obvious pleading deficiencies. Specifically, Plaintiff fails to allege the circumstances requiring a follow-up appointment and moreover, Plaintiff does not assert any adverse consequences from a purported delay in

scheduling a follow-up appointment. Even if this Court were to overlook this pleading's deficiencies, Plaintiff's exhibits attached to his original complaint actually belie any claim that Defendants acted with deliberate indifference in their alleged failure to schedule him for a follow-up appointment, as the exhibits reflect that Plaintiff was provided continued access to medical care. *See e.g.,* (Doc. 1, at 30); (Doc. 1, at 39); (Doc. 1, at 40). Indeed, Plaintiff appears to have received numerous appointments, examinations, and treatments for his medical diagnoses, and was never prevented from reporting to sick call when he had a specific complaint. Accordingly, this Court recommends dismissal of such claims.

Plaintiff also alleges that these Medical Defendants engaged in inaccurate and substandard medical record-keeping. However, Plaintiff again fails to set forth any specific factual allegations to support his conclusory deliberate indifference claim with respect to his medical records as required by *Iqbal*. *Ashcroft v. Iqbal,* 556 U.S. 662 (2009). Indeed, he has not provided a sufficient factual basis to "'nudge' . . . his claim . . . 'across the line from conceivable to plausible.'" *Id.* at 680 (quoting *Bell Atlantic v. Twombly,* 550 U.S. 544, 570 (2007)). Plaintiff's allegations fail to specify the inaccuracies contained within the medical record and moreover, fail to show that he sustained any sort of serious physical injury as a result of the purported inaccuracies. As Plaintiff's amended complaint fails to provide a sufficient basis to support a claim that the Defendants acted with deliberate indifference, this Court recommends dismissal of such claims.

### 4.   Physician Assistant J. Daya

Plaintiff alleges that Defendant Physician Assistant J. Daya was deliberately indifferent to his medical needs because she falsified a grievance response by representing that a previously

conducted audiogram was normal, failed to schedule Plaintiff for an evaluation to assess the fit

of his diabetic shoes, and denied Plaintiff's request for diabetic socks.[9]

With respect to Plaintiff's assertion that Defendant Daya falsified a response to

Grievance Number 409383 dated May 3, 2012, that response was drafted by Defendant

Luscavage, who noted that "a previous audiogram was normal and, according to the PA,

[Plaintiff] had no problems hearing her when she asked . . . questions." (Doc. 1, at 30). It does

not appear that Defendant Daya participated in drafting the response or was even the physician

assistant who evaluated Plaintiff. Nevertheless, even assuming Defendant Daya misinformed

Defendant Luscavage that an audiogram was previously performed based on her review of his

medical chart, such a mishap does not amount to deliberate indifference to Plaintiff's medical

needs, as Plaintiff has failed to articulate how this alleged misrepresentation resulted in the

worsening of his condition.[10] Moreover, assuming Defendant Daya was the physician assistant

who evaluated Plaintiff's hearing capabilities, to the extent Plaintiff merely disagrees with the

––––––––––––––––––––

[9] It is unclear why Plaintiff alleges that Defendant Daya denied his request for diabetic socks, given that Defendant McCarthy responded to Plaintiff's inmate request that was addressed specifically to her. (Doc. 1, at 35). Defendant McCarthy notes in her response that there is "no such thing as diabetic socks or thermals" and suggests that Plaintiff "purchase thermals through [the] commissary." (Doc. 1, at 35). Nevertheless, even assuming that Defendant Daya was involved in, or knew of, Plaintiff's request and that such a request fell within the ambit of her authority, the amended complaint does not demonstrate the she intentionally refused to provide such medical treatment.

[10] The Court notes that Plaintiff submitted a request slip dated May 20, 2013, wherein he requests the status of his hearing test. (Doc. 1, at 40). Based on this request slip, it would appear as though Plaintiff received the hearing test he desired.

physician assistant's diagnoses of the hearing test as normal, such allegations are not actionable under the Eighth Amendment.

Further, Plaintiff's complaints with respect to the scheduling of an appointment to address his diabetic shoes must fail as well, as the response to the Grievance 409383 indicates that Plaintiff has been "scheduled to see the physician to discuss diabetic shoes." (Doc. 1, at 30). Assuming it was Defendant's Daya's responsibility to schedule an appointment, the appointment was in fact scheduled. Nevertheless, even assuming that the appointment was not scheduled in accordance with Defendant Luscavage's representations, the failure to schedule the appointment at most exhibits negligence, which is insufficient to state a cognizable Eighth Amendment claim.

Overall, this Court finds no instance in the allegations in the amended complaint where the medical treatment Plaintiff received amounted to deliberate indifference to a serious medical need. Rather, Plaintiff's amended complaint is littered with allegations establishing attentiveness on the part of the medical defendants. In as much as Plaintiff merely disagrees with the independent medical judgment of the Medical Defendants, he has failed to allege facts in accordance with the Eighth Amendment medical care standard set forth above. Accordingly, this Court recommends that Plaintiff's Eighth Amendment claims against all three Medical Defendants be dismissed, as Plaintiff has alleged no set of facts in support of his claim which would entitle him to relief.

C.  CLAIMS AGAINST WEXFORD HEALTH NETWORK

According to Plaintiff, Wexford Health Network is a private corporation that has been contracted to provide medical care to inmates at SCI-Coal Township. (Doc. 3). Wexford Health

Network is the alleged employer of the medical defendants. (Doc. 3). In his amended complaint, Plaintiff alleges that Wexford Health Network "failed to properly train and supervise their employees or agents [and] failed to accommodate the Plaintiff['s] needs." (Doc. 19, at 16).

"[A]lthough a private corporation offering medical services to inmates cannot be held liable for an alleged § 1983 violation under a theory of *respondeat superior*, it can be held liable for a policy or custom that demonstrates deliberate indifference." *Francis v. Carroll*, 659 F. Supp. 2d 619, 625–26 (D. Del. 2009) (internal quotation marks omitted). *See generally Monell v. Dep't of Social Servs. of N.Y.*, 436 U.S. 658 (1978) (subjecting municipalities to liability for policies or customs that cause constitutional deprivations); *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 584 (3d Cir. 2003) (applying *Monell* to a private company providing medical services to inmates). Thus, to state a claim against Wexford Health Network, the Plaintiff must allege that there was a relevant Wexford Health Network policy or custom, and that this policy or custom caused the constitutional violation he alleges. *See Natale*, 318 F.3d at 583–84.

Here, the Plaintiff fails to identify the causal link between the alleged policy or custom and any constitutional violation. *See Lopez v. Sacramento*, No. 2:04-CV-2009, 2006 WL 1652694, at *5 (E.D. Cal. June 14, 2006); *Springer v. Phila.*, No. 87-4292, 1988 WL 62167, at *1 (E.D. Pa. 1988). More importantly, having failed to state a cognizable constitutional claim against any of the individual medical defendants, the Plaintiff has failed to state a claim against Wexford Health Network under *Monell* as well. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) ("If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have authorized the use of constitutionally excessive

force is quite beside the point.");*see Deninno v. Municipality of Penn Hills*, 269 Fed. App'x 153, 158 (3d Cir. 2008).

Accordingly, the Plaintiff has failed to state a claim against Wexford Health Network.

## IV.   LEAVE TO AMEND

The Third Circuit has instructed that if a complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). In this case, there is nothing to suggest that amendment of Plaintiff's Eighth Amendment deliberate indifferent claim against Medical Defendants Landsberg, Popick, Daya, or Wexford Health Network would be futile, nor is there any basis to believe it would be inequitable. It is therefore recommended that Plaintiff be granted leave to amend his complaint within a specified time period following dismissal of his claims against these four Defendants. However, the amended complaint must be a pleading that stands by itself without reference to his original complaint. *Young v. Keohane*, 809 F. Supp. 1185, 1198 (M.D. Pa. 1992). The amended complaint must establish the existence of actions taken by the Defendants which have resulted in constitutional deprivations. It must specify which actions are alleged as to which Defendants. Further, it must be "simple, concise, and direct" as required by Rule 8(e)(1) of the Federal Rules of Civil Procedure. Moreover, the amended complaint should be limited to those claims that arise out of the same transaction or occurrence or series of transactions or occurrences and that have questions of law or fact common to all named Defendants and claims.

**V.**   **RECOMMENDATION**

Based on the foregoing, it is recommended that:

1. Defendants' motions to dismiss (Doc. 24; Doc. 30; Doc. 37) be **GRANTED**;

2. Defendants' motion to dismiss for failure to prosecute (Doc. 47) be **DENIED AS MOOT**;

3. Plaintiff be given an appropriate amount of time following dismissal of all Defendants to amend his complaint to set forth an Eighth Amendment deliberate indifference claim against Defendants Landsberg, Popick, Daya, and Wexford Health Network in accordance with Rule 8(e)(1) of the Federal Rules of Civil Procedure; and

4. This matter be remanded to the undersigned for further proceedings.


**BY THE COURT:**

Dated: July 21, 2015                                    *s/ Karoline Mehalchick*

**KAROLINE MEHALCHICK**
**United States Magistrate Judge**

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

RICHARD ALAN MCANULTY,

                  Plaintiff | CIVIL ACTION NO. 3:13-CV-03104

v.

SUPT. VINCENT MOONEY, et al., | (CAPUTO, J.)
                                  (MEHALCHICK, M.J.)

                  Defendants

## NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing **Report and Recommendation** dated **June 18, 2015**.

Any party may obtain a review of the Report and Recommendation pursuant to Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636(b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

**Dated: July 21, 2015**

                                    *s/ Karoline Mehalchick*
                                    **KAROLINE MEHALCHICK**
                                    **United States Magistrate Judge**