**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

RICHARD ALAN McANULTY,

    Plaintiff,

        v.

SUPT. VINCENT MOONEY, et al.,

    Defendants.

CIVIL ACTION NO. 3:13-CV-03104

(JUDGE CAPUTO)

(MAGISTRATE JUDGE MEHALCHICK)

## MEMORANDUM

Presently before me is (1) the Report and Recommendation ("R&R") of Magistrate Judge Mehalchick (Doc. 51) to Defendants' motions to dismiss Plaintiff's Amended Complaint (Docs. 24, 30, 37, & 47), and (2) Plaintiff's motion to appoint counsel (Doc. 54). Magistrate Judge Mehalchick recommends that (1) Defendants' motions to dismiss for failure to state a claim (Docs. 24, 30, & 37) be granted; (2) Defendants' motion to dismiss for failure to prosecute (Doc. 47) be denied as moot; and (3) Plaintiff's claims be dismissed as to all named Defendants. Because I find that Plaintiff has failed to state a claim upon which relief may be granted against the DOC Defendants,[1] Physician Assistant Daya, and Wexford Health Network, I will adopt the R&R in part and Plaintiff's claims against these defendants will be dismissed without prejudice. Plaintiff shall have twenty-one (21) days from the date of entry of this Memorandum to amend his complaint. Otherwise, the claims will be dismissed with prejudice. However, because I find that Plaintiff has adequately stated a claim against Doctors Landsberg and Popick for their failure to reorder medication for Plaintiff, I will deny in part their motion to dismiss. Plaintiff's remaining claims against

---

[1]    As I note further below, the "DOC Defendants" shall refer to Superintendent Vincent Mooney, former Superintendent David A. Varano, Deputy Superintendents Michael Miller and Anthony Luscavage, Health Care Administrator Kathryn McCarty, Registered Nurse Supervisor Donna Dressler, Unit Manager Charles Custer, Grievance Coordinator Trish Kelley, Corrections Officer Shultz, and Counselor D. Picarelli.

Doctors Landsberg and Popick will be dismissed without prejudice.  Because I find that Plaintiff has attempted to litigate his case, I will also deny Wexford Health Network and Doctors Landsberg and Popick's motion to dismiss for lack of prosecution.  Finally, because Plaintiff has not provided any reasons different from those he offered in his second motion to appoint counsel, which I denied, Plaintiff's third motion to appoint counsel will be denied.

## I. Background

On December 30, 2013, Plaintiff Richard Alan McAnulty initiated this section 1983 civil rights action by filing a *pro se* complaint alleging claims against several Department of Corrections ("DOC") employees, the prison's contracted medical provider, and three (3) of its employees.  (Doc. 1.)  An amended complaint was subsequently filed (Doc. 19), which the Clerk of Court inadvertently docketed as a new civil action.  *See McAnulty v. Mooney et al.*, 3:14-CV-0622.  On April 3, 2014, the Clerk of Court was directed to consolidate both actions, as both complaints involved common questions of law and fact.  (Doc. 18.)

In his Amended Complaint, Plaintiff alleges that (1) Superintendent Vincent Mooney, former Superintendent David A. Varano, Deputy Superintendents Michael Miller and Anthony Luscavage, Health Care Administrator Kathryn McCarty, Registered Nurse Supervisor Donna Dressler, Unit Manager Charles Custer, Grievance Coordinator Trish Kelley, Corrections Officer Shultz, and Counselor D. Picarelli (the "DOC Defendants"); (2) Wexford Health Network; and (3) Dr. Marc Landsberg, Dr. Alan Popick, and Physician Assistant Jennifer Daya (the "Medical Defendants") failed to provide proper medical care for his chronic and ongoing illnesses, including diabetes, high blood pressure, cervical pain, hearing loss, and fibromyalgia, in violation of the Eighth and Fourteenth Amendments. (Doc. 19.)  Specifically, Plaintiff challenges Defendants' failure to refill his prescriptions, schedule follow-up appointments, maintain accurate medical records, provide him with properly fitting diabetic shoes and socks, issue an Inmate Disability Accommodations

Request Form, respond to his request for information pertaining to a new procedure regarding chronic medications, respond to his request for a new mattress.  Plaintiff also contests the refusal of Defendants to accommodate his non-medical requests, such as allowing him additional time in the law library, assisting him with locating a confiscated storage box containing legal materials, facilitating a conference call with the Department of Justice, failing to act upon repeated requests to add visitors, and mailing various legal documents via certified mail.

On April 15, 2014, the DOC Defendants filed a motion to dismiss for failure to state a claim.  (Doc. 24.)  Medical Defendant Daya as well as Wexford Health Network and Medical Defendants Landsberg and Popick also filed motions to dismiss for failure to state a claim on April 22, 2014 (Doc. 30) and May 9, 2014 (Doc. 37), respectively.  On December 30, 2014, Wexford Health Network and Medical Defendants Landsberg and Popick filed a motion to dismiss for lack of prosecution.  (Doc. 47.)

On June 23, 2014, Plaintiff filed a brief in opposition to Defendant Daya's motion to dismiss (Doc. 40), and on January 14, 2015, he filed a brief in opposition to the DOC Defendants' motion to dismiss (Doc. 49).  On June 26, 2014, Defendant Daya filed a reply brief (Doc. 41) and on January 28, 2015, the DOC Defendants filed a reply brief (Doc. 50).  To date, however, Plaintiff has not filed a response to Wexford Health Network and the remaining Medical Defendants' motion to dismiss.  (Doc. 37.)

On July 21, 2015, Magistrate Judge Mehalchick issued the instant Report & Recommendation.  (Doc. 51.)  On August 20, 2015, Plaintiff filed a Motion to Appoint Counsel (Doc. 54) and on November 4, 2015, he filed his objections to Magistrate Judge Mehalchick's R&R (Doc. 57).  Responses to Plaintiff's objections were filed by Medical Defendant Daya and the DOC Defendants on November 6, 2015 (Doc. 58) and November 16, 2015 (Doc. 59), respectively.  No reply was filed.  The R&R and Plaintiff's objections thereto are now ripe for review.

## II. Legal Standards

### A.    Legal Standard in Reviewing a Report and Recommendation

Where objections to the Magistrate Judge's Report and Recommendation are filed, the district court must conduct a *de novo* review of the contested portions of the report. *Sample v. Diecks*, 885 F.2d 1099, 1106 n.3 (3d Cir.1989) (citing 28 U.S.C. § 636(b)(1)(C)). However, this only applies to the extent that a party's objections are both timely and specific. *Goney v. Clark*, 749 F.2d 5, 6–7 (3d Cir.1984). In conducting a *de novo review*, the court may accept, reject, or modify, in whole or in part, the factual findings or legal conclusions of the magistrate judge. 28 U.S.C. § 636(b)(1); *Owens v. Beard*, 829 F. Supp. 736, 738 (M.D. Pa. 1993). Although the review is *de novo*, the law permits the court to rely on the recommendations of the magistrate judge to the extent it deems proper. *United States v. Raddatz*, 447 U.S. 667, 675–76 (1980); *Goney*, 749 F.2d at 7. Uncontested portions of the report may be reviewed at a standard determined by the district court. *See Thomas v. Arn*, 474 U.S. 140, 154 (1985). At the very least, the court should review uncontested portions for clear error or manifest injustice. *Cruz v. Chater*, 990 F. Supp. 375, 376–77 (M.D. Pa. 1998).

### B.    Legal Standard for a Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). When considering a Rule 12(b)(6) motion, the court's role is limited to determining if a plaintiff is entitled to offer evidence in support of his claims. *See Semerenko v. Cendant Corp.*, 223 F.3d 165, 173 (3d Cir. 2000). The court does not consider whether a plaintiff will ultimately prevail. *Id.* A defendant bears the burden of establishing that a plaintiff's complaint fails to state a claim. *See Gould Elecs. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000).

A pleading that states a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The statement required by Rule 8(a)(2) must "'give the defendant fair notice of what the . . .

4

claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  The inquiry at the motion to dismiss stage is "normally broken into three parts:  (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

Pleadings and other submissions by *pro se* litigants are subject to liberal construction.  *Baker v. Younkin*, 529 F. App'x 114, 115 (3d Cir. 2013).  All well-pleaded factual allegations will be accepted as true and all reasonable inferences will be drawn in the plaintiff's favor.  *Id.*  Although allegations of a *pro se* complaint are held to less stringent standards than formal pleadings drafted by lawyers, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), a *pro se* complaint must still "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  *Id.* at 664.  Dismissal is appropriate only if, accepting as true all of the facts alleged in the complaint, a plaintiff has not pleaded "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  This means that there must be enough factual allegations "to raise a reasonable expectation that discovery will reveal evidence of" each necessary element. *Phillips v. Cty. of Allegheny*, 551 F.3d 224, 234 (3d Cir. 2008) (citing *Twombly*, 550 U.S. at 556).  The plausibility standard is not akin to a "probability requirement," but asks for more than a sheer possibility that a defendant has acted unlawfully. *Iqbal*, 556 U.S. at 678.  A court need not assume that the plaintiff can prove facts that were not alleged in the complaint, *see City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 263 & n.13 (3d Cir. 1998), or credit a complaint's "bald assertions" or "legal conclusions," *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (citation and internal quotation marks omitted).  In deciding a motion to dismiss, a court should

consider the complaint, exhibits attached to the complaint, matters of public record, and undisputedly authentic documents if the complainant's claims are based upon these documents. *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citation omitted).

### III. Discussion

Plaintiff brings claims under 42 U.S.C. § 1983, which provides that every person who, under color of state law, subjects any citizen of the United States to the deprivation of any federal right shall be liable to the party injured.  In order to state a claim under this statute, Plaintiff must show that:  (1) the conduct complained of was committed by a person acting under color of state law, and (2) the conduct deprived him of rights, privileges, or immunities secured by the Constitution or the laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981); *Groman v. Twp. of Manalapan*, 47 F.3d 628, 638 (3d Cir. 1995).  It is undisputed that Defendants were acting under color of state law.  Here, Defendants only challenge the legal sufficiency of the complaint with respect to its allegations that they deprived Plaintiff of rights, privileges, or immunities secured by the Constitution or the laws of the United States.

**A.      Defendants' Motions to Dismiss for Failure to State a Claim**

**1.      DOC Defendants**

Plaintiff claims that the DOC Defendants, all employees of the Pennsylvania Department of Corrections at SCI-Coal Township, are liable under the Eighth and Fourteenth Amendments for their failure to intervene or respond to his complaints of inadequate medical care, as well as several of his non-medical requests, such as scheduling a telephone conference with the Department of Justice and mailing his legal documents via certified mail.  The DOC Defendants argue that Plaintiff's Amended Complaint should be dismissed because Plaintiff has failed to (1) allege personal involvement on the part of the supervisory DOC Defendants, (2) allege a constitutional violation, and (3) plead sufficient facts showing that they were deliberately indifferent to Plaintiff's serious medical needs.

### a.   Lack of Personal Involvement

A defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be solely predicated on the operation of *respondeat superior*. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).   Rather, each named defendant must be shown, via the complaint's allegations, to have been personally involved in the events or occurrences that underlie a claim.   *Zerbe v. Karnes*, No. 4:07-CV-413, 2008 WL 220414, at *4 (M.D. Pa. Jan. 25, 2008) (citing *Rizzo v. Goode*, 423 U.S. 362 (1976)).   Personal involvement can be shown through allegations of personal direction or actual knowledge and acquiescence.   *Rode*, 845 F.2d at 1207.   Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity.   *Id.* at 1207-08 (citing *Boykins v. Ambridge Area Sch. Dist.*, 621 F.2d 75, 80 (3d Cir. 1980) (civil rights complaint adequate where it states time, place, and persons responsible)); *see also Davis v. Samuels*, 608 F. App'x 46, 49 (3d Cir. 2015) (affirming dismissal because the prisoner "made no attempt to allege particular facts leading to the conclusion that [Defendant] personally knew of or acquiesced in any of the challenged conduct of subordinates"); *Arroyo v. Li*, No. 3:CV-13-1506, 2014 WL 4294506, at *3 (M.D. Pa. Aug. 28, 2014) (explaining that each named defendant must be shown, via the complaint's allegations, to have been ***personally involved*** in the events or occurrences that underlie a claim).   Additionally, an official who actually knew of a substantial risk to inmate health or safety will not be liable where the official acted reasonably in response, even if the harm ultimately ensues.   *Geib v. James*, No. 3:CV-04-1923, 2005 WL 2453961, at *3 (M.D. Pa. Oct. 4, 2005).

Here, Plaintiff has failed to allege knowledge and acquiescence by the DOC Defendants.   First, Plaintiff claims that he adequately alleged personal involvement with respect to Superintendent Mooney and former Superintendent Varano because "as Superintendents," they were "in control of all policies, practices, and customs of their imployees [sic] and hold a responsibility to protect the plaintiffs [sic] safty [sic] and health."   (Doc. 57, at 1.)   However, the Third Circuit has held that plaintiffs may not

assign liability to prison officials simply because they "had 'responsibility for supervising' the other defendants." *Rode*, 845 F.2d at 1208; *see also Geib*, 2005 WL 2453961, at *3 (granting motion to dismiss deliberate indifference claim against prison officials because they could not be held liable purely based on their supervisory roles).  Second, Plaintiff's allegations that the DOC Defendants mishandled his grievances also fail to state a claim because mere involvement in the grievance process fails to establish personal involvement.  *Rode*, 845 F.2d at 1208*; see also Smith v. O'Boyle*, 251 F. App'x 87, 89 (3d Cir. 2007) (affirming dismissal against the defendants who were only involved in the prisoner's grievance and appeals process because they were not ***personally*** responsible for the alleged constitutional deprivations).  Third, Plaintiff's claim that the DOC Defendants mishandled his grievances fails to state a claim because there is "no constitutionally protected liberty interest in receiving a particular result through the prison grievance process." *Parkell v. Markell*, No. 14-3989, 2015 WL 4523521, at *5 (3d Cir. July 27, 2015) (citation omitted).  The Third Circuit has consistently affirmed dismissal of prisoners' section 1983 claims for this reason.  *See, e.g.*, *Glenn v. DelBalso*, 599 F. App'x 457, 459 (3d Cir. 2015) (affirming dismissal of prisoner's due process claim without leave to amend because "[a]ccess to prison grievance procedures is not a constitutionally-mandated right, and allegations of improprieties in the handling of grievances do not state a cognizable claim under § 1983"); *Davis*, 608 F. App'x at 48-49 (affirming dismissal of prisoner's claim alleging constitutional violations arising from grievance procedures because "the Constitution does not even require a prison to utilize a grievance procedure" and therefore "[b]ecause prisoners have no constitutional right to a grievance process, the tenor or existence of [the defendant's] response did not violate [the prisoner's] constitutional rights") (citations omitted); *Wilson v. Horn*, 971 F. Supp. 943, 947 (E.D. Pa. 1997), *aff'd without opinion*, 142 F.3d 430 (3d Cir. 1998) (noting that the failure of a prison to address a prisoner's grievances does not violate a constitutional right).  For these same reasons, Plaintiff's claim against Defendant McCarty as Health Care Administrator for her supervisory role and involvement in the grievance process

must also fail.  *See, e.g.*, *Arroyo*, 2014 WL 4294506, at *3 ("[A]ny attempt by Plaintiff to establish liability against [Defendant] solely based upon her supervisory capacity as the prison's Health Care Administrator or based upon her handling of any administrative grievance filed by [Plaintiff] is insufficient.").  Accordingly, Plaintiff has failed to adequately allege personal involvement.

### b.   Lack of a Constitutional Violation

Plaintiff also asserts that Defendants violated his constitutional rights by failing to accommodate several non-medical requests, such as scheduling a telephone conference with the Department of Justice, mailing his legal documents via certified mail, and assisting Plaintiff in recovering an "illegally confiscated record storage box and letters authorizing Plaintiff to possess storage boxes for his legal work."  (Doc. 19, at 14.)  However, even assuming Plaintiff has adequately alleged personal involvement by the DOC Defendants for these claims, these allegations fail to give rise to a constitutional violation.  *See, e.g.*, *Lyons v. Sec'y of Dep't of Corr.*, 445 F. App'x 461, 463 (3d Cir. 2011) (affirming dismissal of prisoner's claim because confiscation of prisoner's legal materials or any other deprivation of inmate property fails to state a cognizable due process claim if there is a grievance process in place).

For example, Plaintiff attempts to assert a claim based on Defendant Picarelli's failure to add a contact, Alan Blose, who had a criminal background, to Plaintiff's visitor list.  However, this claim is facially deficient because "there is no absolute constitutional right to visitation."  *Bell v. Holmes*, No. CIV-13-6955 JBS, 2015 WL 851804, at *3 (D.N.J. Feb. 23, 2015) (citing *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989); *see also Ky. Dep't of Corr.*, 490 U.S. at 461 ("The denial of prison access to a particular visitor is well within the terms of confinement ordinarily contemplated by a prison sentence, and therefore is not independently protected by the Due Process Clause.") (citation and internal quotation marks omitted); *Neumeyer v. Beard*, 301 F. Supp. 2d 349, 351 (M.D. Pa. 2004), *aff'd*, 421 F.3d 210 (3d Cir. 2005) ("[I]t is well-settled that there is not a constitutional right to visitation for convicted prisoners, their family and

spouses."). Therefore, Plaintiff's claim that Defendant Picarelli denied him visitation fails to state a claim under section 1983.

Plaintiff also appears to allege a denial of access to the courts claim. (*See, e.g.*, Doc. 19, ¶ 52 ("Defendant Shaffer failed to supply copies of illegally confiscated authorization letters to Plaintiff . . . Plaintiff suffered great mental anguish and was denied access to the courts.").) However, this constitutional right is not violated unless Plaintiff is able to allege an actual injury to his ability to litigate a claim. *See, e.g., Lyons*, 445 F. App'x at 464 ("[W]here an inmate does not allege an actual injury to his ability to litigate a claim, his constitutional right of access to the courts has not been violated.") (citing *Lewis v. Casey*, 518 U.S. 343, 352-53 (1996)). Here, Plaintiff has failed to allege an actual injury to his ability to litigate a claim. Therefore, this claim against all Defendants must fail as well.

Plaintiff also asserts that Defendant Picarelli ignored his request to facilitate a telephone conference with the United States Department of Justice. However, this raises no issues of constitutional concern. First, it does not raise an access to courts claim because as stated above, he has not asserted any actual injury to his ability to litigate his claims–Defendant Picarelli has not restricted Plaintiff from placing a call to the Department of Justice himself. Indeed, Plaintiff is free to call the Department of Justice so long as it conforms to the DOC's policy statement governing telephone privileges. Second, Plaintiff is free to communicate with the Department of Justice through other means, such as postal mail. For this same reason, this claim also does not raise any First Amendment right to communication or association concern.

Next, there is no legal precedent to support Plaintiff's claim for a constitutional violation based on Defendant Picarelli's conversations with inmates regarding their parole conditions and arrangements for release in the presence of Plaintiff simply because Plaintiff has a life sentence without possibility of parole. Although hearing about the release of other inmates may have been uncomfortable for Plaintiff, these conversations certainly do not rise to the level of a constitutional violation.

As for Plaintiff's claim against Corrections Officer Shultz, Plaintiff asserts that Schultz was directed to test the prison's announcement system based on Plaintiff's complaints that he could not hear them due to his alleged hearing loss.  Plaintiff claims that Shultz "verbally abused and demeaned Plaintiff during that sound test."  (Doc. 19, at 16.)  However, it is well-established that verbal harassments or threats of these sorts, "without some reinforcing act accompanying them," do not state a constitutional claim. *MacLean v. Secor*, 876 F. Supp. 695, 698 (E.D. Pa. 1995); *see also Booth v. King*, 228 F. App'x 167, 172 (3d Cir. 2007) ("[A]bsent any allegation of physical harm, the [defendant's] verbal threats do not amount to a constitutional violation.") (citation omitted); *Murray v. Woodburn*, 809 F. Supp. 383, 384 (E.D. Pa. 1993) ("Mean harassment . . . is insufficient to state a constitutional deprivation."); *Prisoner's Legal Ass'n v. Roberson*, 822 F. Supp. 185, 189 (D.N.J. 1993) ("[V]erbal harassment does not give rise to a constitutional violation enforceable under § 1983.").  Here, Plaintiff has not alleged any "reinforcing act" accompanying these verbal assaults.  Therefore, he has failed to state a constitutional claim.

### c.    Deliberate Indifference

Plaintiff has also failed to show that the DOC Defendants were deliberately indifferent to his serious medical needs.  Deliberate indifference is a "subjective standard of liability consistent with recklessness as that term is defined in criminal law." *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003) (citation and internal quotation marks omitted).  In *Farmer v. Brennan*, the Supreme Court held that finding a prison official liable for a deliberate indifference claim under the Eighth Amendment requires showing that the official "knows of and disregards an excessive risk to inmate health or safety."  511 U.S. 825, 837 (1994); *see also Natale*, 318 F.3d at 582 (same). To act with deliberate indifference is to "recklessly disregard a substantial risk of harm." *Baker*, 529 F. App'x at 115 (citation and internal quotation marks omitted).  A plaintiff may make this showing by establishing that the defendants "intentionally denied or delayed medical care." *Id.* (citation, internal quotation marks, and alterations omitted).

11

However, where a prisoner has received some medical attention and the dispute is simply over the adequacy of that treatment, federal courts are reluctant to "second guess" medical judgments and to constitutionalize claims that sound in state tort law. *Id.* at 115-16 (citation, internal quotation marks, and alteration omitted).

Here, Plaintiff has failed to allege deliberate indifference.  First, Plaintiff's allegations of denial of medical care are too vague and conclusory to adequately state a claim for deliberate indifference. *See, e.g.*, *Smith*, 251 F. App'x at 89 (affirming dismissal of section 1983 claim alleging deliberate indifference to prisoner's serious medical needs because prisoner's failure to make specific allegations against the defendants could not withstand a motion to dismiss).  For example, in *Winslow v. Prison Health Services*, the Third Circuit affirmed the dismissal of a deliberate indifference claim because the plaintiff's "naked assertion" that the defendants considered cost in rejecting medical treatment for the plaintiff's hernia was "exceedingly conclusory."  406 F. App'x 671, 674-75 (3d Cir. 2011).  Specifically, the Third Circuit explained that the plaintiff failed to "provide any indication" either of "what basis he has for thinking that 'policies to save money' affected his medical treatment" or "what specific treatment he was denied as a result of these policies."  *Id.* (citation omitted).  Similarly, Plaintiff here does not identify any facts to support his conclusory assertion that Defendants intentionally refused to provide care or delayed treatment for non-medical reasons.  *See Monmouth Cty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 346 (3d Cir. 1987) (citations omitted).  Absent these factual allegations to support his conclusory assertions, Plaintiff's claims must fail.  *Farmer*, 511 U.S. at 834.

Second, none of the DOC Defendants are physicians, and therefore cannot be considered deliberately indifferent simply because they "failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor." *Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993) (affirming that as a matter of law, non-physician prison officials could not be considered deliberately indifferent for this reason); *see also Smith*, 251 F. App'x at 89 (affirming dismissal of section 1983 claim

12

against prison officials because "[p]rison officials who are not physicians are entitled to defer to the medical judgment of staff physicians, and an administrator does not become responsible for the inmate's medical treatment simply by virtue of reviewing an inmate grievance").  Absent a "belief or actual knowledge that medical personnel mistreated or failed to treat a prisoner," the DOC Defendants, as non-physicians, cannot be charged with the Eighth Amendment scienter requirement of deliberate indifference.  *Innis v. Wilson*, 334 F. App'x 454, 456-57 (3d Cir. 2009) (affirming dismissal of prisoner's deliberate indifference claim against non-medical prison officials for this reason).  Here, Plaintiff was already being treated by medical professionals and attending scheduled appointments with doctors.  Absent any belief or actual knowledge that medical personnel were mistreating or failing to mistreat Plaintiff, the DOC Defendants were entitled to rely on these medical professionals' judgment.  *Id.*  Because Plaintiff has failed to adequately allege this belief or actual knowledge, Plaintiff's claims will be dismissed.

As prison officials who are not physicians, the DOC Defendants may reasonably rely on and defer to the medical judgment of doctors.  *See Smith*, 251 F. App'x at 89 ("Prison officials who are not physicians are entitled to defer to the medical judgment of staff physicians.").  Therefore, Defendant Custer's refusal to accommodate Plaintiff's request for a new mattress to ease his back pain fails to establish deliberate indifference because Custer was entitled to defer to the medical treatment already being provided to Plaintiff.  For this same reason, the remaining DOC Defendants, none of whom are physicians (including Health Care Administrator McCarty, whose position was purely administrative), did not exhibit deliberate indifference when they deferred to the medical staff and declined Plaintiff's request for different treatment.  *Id.*

Plaintiff also asserts claims against Defendant McCarty for (1) her denial of his request to issue an Inmate Disability Accommodations Request Form and (2) her failure to respond to his request with questions pertaining to a new procedure regarding chronic medications that was posted in his housing unit.  (Doc. 19, ¶¶ 35-36.)  However, these

conclusory allegations fail to demonstrate deliberate indifference.  First, Plaintiff failed to allege facts surrounding the circumstances of his Inmate Disability Accommodations Request Form, such as when the request was made, what he requested, or why it was denied.  Second, there is no legal precedent to support Plaintiff's claim that McCarty's failure to answer his questions regarding the new procedure for ordering refills of chronic medications establishes deliberate indifference to a serious medical need, particularly absent any allegation of how this failure to answer his questions affected his medical treatment.  Accordingly, Plaintiff's claims against the DOC Defendants must fail.

### 2.    Medical Defendants

Plaintiff alleges that the Medical Defendants–Doctors Landsberg and Popick and Physician Assistant Daya–were deliberately indifferent to his "chronic and ongoing geriatric illnesses" in violation of the Eighth and Fourteenth Amendments.  The Medical Defendants seek dismissal of all claims against them on the basis that Plaintiff has failed to establish deliberate indifference to a serious medical need.

As a preliminary matter, Plaintiff appears to raise a claim under the Eighth and Fourteenth Amendments based on the same conduct–that Defendants were deliberately indifferent to his serious medical needs.  However, "[b]ecause the Eighth Amendment provides an explicit source of protection for deliberate indifference to serious medical needs, Plaintiff's claim is preempted by the Eighth Amendment and should not be analyzed as a substantive due process claim under the Fourteenth Amendment." *Sadelmyer v. Peltzer*, No. 2:12-CV-1785, 2013 WL 4766517, at *6 (W.D. Pa. Sept. 4, 2013).  Accordingly, Plaintiff's Fourteenth Amendment claim fails as a matter of law and I will analyze Plaintiff's claim under the Eighth Amendment.

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain," which includes "deliberate indifference to serious medical needs of prisoners."  *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976) (finding that a failure to provide adequate medical care constitutes cruel and unusual punishment).  To state a violation of the constitutional right to adequate medical care under the Eighth Amendment, Plaintiff must allege (1) a

serious medical need and (2) acts or omissions by prison officials that indicate deliberate indifference to that need. *Natale*, 318 F.3d at 582. A serious medical need is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a layperson would recognize the need for a doctor's attention. *Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987). Here, Plaintiff alleges that he suffers from "major cervical damage, fibromyalgia, high blood pressure, diabetes, hearing loss and chronic geriatric [illnesses]." (Doc. 1, at 15.) I will assume that Plaintiff has a serious medical need. Accordingly, Plaintiff's claim will turn on whether the Medical Defendants exhibited "deliberate indifference" toward his serious medical needs.

As explained above, deliberate indifference is a "subjective standard of liability consistent with recklessness as that term is defined in criminal law." *Natale*, 318 F.3d at 582 (citation and internal quotation marks omitted). An "inadvertent failure to provide adequate medical care" does *not* constitute "deliberate indifference" or an "unnecessary and wanton infliction of pain" in violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105-06. Therefore, a complaint that a prison doctor has been negligent in diagnosing or treating a medical condition fails to state a claim for medical mistreatment under the Eighth Amendment. *Id.* at 106. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. *Id.* As long as a physician exercises professional judgment, his behavior will not violate a prisoner's constitutional rights. *Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990) (citing *Youngberg v. Romeo*, 457 U.S. 307, 322-23 (1982)). For example, in *Brown v. Borough of Chambersburg*, the plaintiff, a pre-trial detainee, went to see the prison doctor for pain in his ribs. 903 F.2d at 278. Although the doctor conducted a visual examination of the plaintiff's upper chest, the doctor failed to press on the plaintiff's ribs, thereby failing to discover that two (2) of the plaintiff's ribs were broken. *Id.* Notwithstanding this failure, the Third Circuit held that the district court did not abuse its discretion in finding that the plaintiff not only failed to state a claim for deliberate indifference, but that the claim was

15

"frivolous." *Id.* (adding that it was not even "reasonably debatable" that there was no constitutional violation).

Additionally, a mere difference of opinion between the prison medical staff and the inmate regarding the diagnosis or treatment received by the inmate does not constitute deliberate indifference. *Lanzaro*, 834 F.2d at 346; *Farmer v. Carlson*, 685 F. Supp. 1335, 1339 (M.D. Pa. 1988). Deliberate indifference is evident where "prison officials erect arbitrary and burdensome procedures that result in interminable delays and outright denials of medical care to suffering inmates." *Lanzaro*, 834 F.2d at 347 (citation and internal quotation marks omitted). Moreover, "prison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners." *Durmer*, 991 F.2d at 67; *see, e.g.*, *Baker*, 529 F. App'x, at 115-16 (prison doctor was not deliberately indifferent in refusing to accommodate prisoner's request for a bi-pap machine with a humidifier even though he suffered from sleep apnea); *Winslow*, 406 F. App'x, at 674-76 (prison doctors were not deliberately indifferent to prisoner's serious medical needs by deciding to forego surgery in treatment of prisoner's hernia); *Zerbe*, 2008 WL 220414, at *7-*8 (nurse's failure to order x-rays of inmate's broken jaw or to immediately consult with doctor did not constitute deliberate indifference, even though jaw was not wired until about nine (9) days after the assault).

### a.   Doctors Landsberg and Popick

Here, Plaintiff alleges that Doctors Landsberg and Popick were deliberately indifferent to his serious medical needs based on their failures to (1) reorder required chronic medications for Plaintiff; (2) maintain updated medical records on Plaintiff; and (3) order proper follow-up appointments to evaluate Plaintiff's condition. (Doc. 19, ¶¶ 46-49; *see also* Doc. 57, at 2.) Although Plaintiff has adequately stated a deliberate indifference claim with regard to the failure to reorder required medication, he has failed to adequately state a claim with regard to the failure to maintain updated medical records and order follow-up appointments.

16

The Medical Defendants argue for dismissal of Plaintiff's deliberate indifference claim regarding their failure to reorder chronic medications on the basis that any failure to reorder medication was due to Plaintiff's own failure to follow a new procedure at the prison initiated on March 1, 2013, for reordering chronic medication.  Magistrate Judge Mehalchick's R&R recommended dismissing Plaintiff's claim on this basis.  (*See* Doc. 51, at 16 ("[T]he grievances and request slips demonstrate that Defendants prescribed the requested medications to Plaintiff, and that Plaintiff was clearly aware of and yet failed to comply with the prison protocol requiring inmates to submit a request for specific chronic medication when fewer than seven pills remained in the prescription.").) However, both the Defendants' motion to dismiss and the R&R improperly relied on documents outside of the operative complaint to make and consider this argument.  The motion to dismiss and R&R cite to exhibits that were attached to Plaintiff's original complaint but not attached to Plaintiff's Amended Complaint, which is the operative complaint.  I may not properly consider these documents on a motion to dismiss. Although the law is clear that I may consider the complaint, matters of public record, and undisputedly authentic documents if the complainant's claims are based upon these documents, these exhibits do not fall within any of these categories.  *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).  These exhibits relied upon, which consist primarily of Plaintiff's grievances and the prison officials' responses thereto, are neither attached to the complaint nor are they matters of public record.  I also cannot conclude that they are undisputedly authentic documents that the complainant's claims are based upon.  This is not, for example, the case where a plaintiff sues for breach of contract but fails to attach the contract to the complaint, in which case, it would be clear that the complaint relies on the contract and that the contract itself may be considered.  Therefore, I may not consider Defendants' argument that any failure to provide Plaintiff with his required medication was due to Plaintiff's own failure to follow prison protocol.

The Medical Defendants also argue that Plaintiff's deliberate indifference claim regarding their failure to reorder his medication fails because mere disagreement over

medical judgment does not give rise to an Eighth Amendment violation. *See Lanzaro*, 834 F.2d at 346 ("Nor does mere disagreement as to the proper medical treatment support a claim of an eighth amendment violation."). However, there was no disagreement between Plaintiff and the medical professionals over whether he needed the medication in question. Rather, the issue was that the required medication was not being provided to Plaintiff. Therefore, Doctors Landsberg and Popick's motion to dismiss this claim will be denied.

Plaintiff also alleges that Doctors Landsberg and Popick failed to maintain updated records on Plaintiff and failed to order proper follow-up appointments to evaluate Plaintiff's condition. However, these vague and conclusory assertions are not supported by any specific factual allegations and therefore fail to adequately state a claim for relief. For example, Plaintiff alleges that Dr. Landsberg "failed to maintain updated medical records on Plaintiff" (Doc. 1, ¶ 46), but fails to allege any facts to support this claim, such as what was missing from his medical records, when Dr. Landsberg purportedly failed to update them, or how the inadequate records affected his medical treatment. Plaintiff also alleges that Dr. Popick "failed to properly schedule follow-up appointment[s] to evaluate Plaintiffs [sic] condition" (Doc. 1, ¶ 47), but again, fails to allege any facts supporting this allegation, such as the circumstances requiring a follow-up appointment or any adverse consequences that resulted from the purported delay in scheduling a follow-up appointment. Therefore, these claims will be dismissed.

### b.    Physician Assistant J. Daya

Plaintiff alleges that Defendant Physician Assistant Daya was deliberately indifferent to his medical needs because she falsified a grievance response by representing that a previously conducted audiogram was normal, failed to provide Plaintiff with a copy of the audiogram, failed to maintain properly updated medical records, failed to schedule Plaintiff for an evaluation to assess the fit of his diabetic shoes, and denied Plaintiff's request for diabetic socks. (Doc. 19, ¶¶ 48-49.)

First, Plaintiff's allegation regarding a falsified grievance response regarding an audiogram does not rise to the level of deliberate indifference proscribed by the Eighth Amendment because he failed to allege how this alleged misrepresentation resulted in the worsening of his condition. *See Geib*, 2005 WL 2453961, at *4 (granting motion to dismiss deliberate indifference claim against physician assistant who allegedly misstated facts in response to one of the plaintiff's grievances because the plaintiff failed to allege how the misstatement impeded or altered his medical treatment). Plaintiff also does not allege that this audiogram was necessary for his medical treatment or prescribed by a physician. Therefore, I cannot conclude that this falsified grievance response or failure to order an audiogram constitutes deliberate indifference to a serious medical need. For these same reasons, I also cannot conclude that Daya's purported failure to provide Plaintiff with a copy of this audiogram constitutes deliberate indifference.

Second, Plaintiff's claim that Daya failed to maintain properly updated medical records on Plaintiff fails to allege a claim for deliberate indifference because as with Plaintiff's claim against Doctors Landsberg and Popick, Plaintiff fails to allege any facts to support this claim, such as what was missing from his medical records, when Daya purportedly failed to update them, or how the inadequate records affected his medical treatment.

Third, Plaintiff claims that Daya failed to schedule Plaintiff for an evaluation to assess the fit of his diabetic shoes and denied Plaintiff's request for diabetic socks. However, this fails to state a claim for deliberate indifference because Plaintiff has failed to allege that Daya acted with the requisite intent. Specifically, Plaintiff has failed to allege that Daya intentionally refused to schedule Plaintiff for an evaluation or acted with reckless disregard for Plaintiff's need for diabetic shoes or socks. *See, e.g.*, *Baker*, 529 F. App'x at 115 (explaining the requisite intent for deliberate indifference claims). At best, Plaintiff has alleged that Daya was negligent in failing to schedule Plaintiff an evaluation. However, this fails to state a claim for deliberate indifference. *See Estelle*, 429 U.S. at 104-08 (explaining that mere negligence fails to satisfy the deliberate

indifference standard).  In fact, Plaintiff suggests that Daya failed to schedule Plaintiff for an evaluation regarding diabetic shoes and denied Plaintiff's request for diabetic socks "as a cost saving method."  (Doc. 19, ¶ 49.)  Assuming this was the actual reason for the failure to schedule Plaintiff an evaluation or grant his request for diabetic socks, this fails to state a claim for deliberate indifference because "prisoners do not have a constitutional right to limitless medical care, free of the cost constraints under which law-abiding citizens receive treatment."  *Winslow*, 406 F. App'x at 674-75 (noting that the plaintiff's "naked assertion that Defendants considered cost in treating [the plaintiff's] hernia does not suffice to state a claim for deliberate indifference").

Additionally, Plaintiff failed to allege how Daya's failure to schedule Plaintiff for an evaluation to assess the fit of his diabetic shoes or denial of his request for diabetic socks affected his medical treatment or worsened his condition.  There is no allegation supporting Plaintiff's claim that an evaluation for diabetic shoes or diabetic socks was necessary for his medical treatment or that the absence of these diabetic shoes or socks caused unnecessary and wanton infliction of pain.

Moreover, Plaintiff's mere disagreement with Defendant Daya over his need for diabetic socks does not establish deliberate indifference.  For example, in *Baker v. Younkin*, the Third Circuit affirmed a Magistrate Judge's order granting a health care administrator and medical doctor's motions to dismiss a prisoner's deliberate indifference claim for this same reason.  529 F. App'x 114 (3d Cir. 2013).  In *Baker*, the Third Circuit held that the prisoner's disagreement with the doctor's medical assessment that his sleep apnea did not require a bi-pap machine with a humidifier failed to state a deliberate indifference claim.  *Id.* at 114-16; *see also Winslow*, 406 F. App'x at 675-76 (explaining that prison doctors did not act with deliberate indifference to prisoner's medical needs by forgoing surgery in treatment of prisoner's hernia); *Brandner v. First Corr. Med.*, 167 F. App'x 328, 329-30 (3d Cir. 2006) (explaining that a failure to treat pain and swelling in prisoner's knee, including a failure to order crutches, a knee brace, or perform an MRI, failed to constitute deliberate indifference to inmate's serious

medical needs and affirming dismissal).  Similarly, here, Plaintiff's disagreement over the medical assessment of his need for diabetic socks fails to state a claim for deliberate indifference.  Absent any allegation that Daya recklessly disregarded a "substantial risk of serious harm" or "intentionally" denied Plaintiff's request, Plaintiff has failed to state a cognizable claim under the Eighth Amendment.  *Baker*, 529 F. App'x at 115-16.  Here, like in *Baker*, Plaintiff "has received some medical attention" and the dispute is simply over the "adequacy of the treatment."  *Id.* at 115.  Therefore, I will not "second guess" the medical judgments made by the prison staff.  *Id.*  Plaintiff's claims will be dismissed.

Although not alleged in his Amended Complaint, Plaintiff asserts in his opposition to Defendant Daya's Motion to Dismiss that she denied him medication.  (Doc. 40, at 3.) Not only is there no allegation of this in his Amended Complaint, but Plaintiff has failed to allege what medication she denied him, when the medications were denied, and what conditions the medications were prescribed to remedy.  He also does not allege that she was the person responsible for providing him with the withheld medication.  Accordingly, Defendant Daya's motion to dismiss this claim will be granted.

### 3.    Wexford Health Network

Plaintiff also asserts claims against Wexford Health Network ("Wexford"), which was contracted for medical services at the Pennsylvania State Correctional Institution at Coal Township.  (Doc. 19, ¶ 16.)  Wexford cannot be held responsible for the acts of its employees under a theory of *respondeat superior* or vicarious liability.  *Natale*, 318 F.3d at 583-84; *see generally Monell v. Dep't of Social Servs. of N.Y.*, 436 U.S. 658 (1978) (subjecting municipalities to liability for policies or customs that cause constitutional deprivations).  Thus, in order for Wexford to be held liable, Plaintiff must allege that there was a relevant Wexford policy or custom, and that the policy caused the constitutional violations he alleges.  *Natale*, 318 F.3d at 583-84.

Not all state action rises to the level of a custom or policy.  *Id.* at 584.  A policy is made "when a decisionmaker possessing final authority to establish municipal policy with respect to the action issues a final proclamation, policy or edict."  *Id.* (citation,

internal quotation marks and alteration omitted).   A custom is an act that has not been formally approved by an appropriate decisionmaker, but is "so widespread as to have the force of law."   *Id.* (citation and internal quotation marks omitted).

There are three (3) situations where acts of a government employee may be deemed to be the result of a policy or custom of the governmental entity for whom the employee works, thereby rendering the entity liable under section 1983.   The first is where the officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy.   *Id.*   The second occurs where no rule has been announced as policy but federal law has been violated by an act of the policy itself.   *Id.*   Third, a policy or custom may exist where the policymaker has failed to act affirmatively at all, though the need to take some action to control the agents of the government "is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need."   *Id.* (citation and internal quotation marks omitted).

Here, Plaintiff has failed to allege any facts to support his conclusory allegation that there was a "custon [sic], policy or procedure of refusing and/or delying [sic] in providing medical treatment to the Plaintiff." (Doc. 19, ¶ 56.)   Plaintiff simply alleges that Wexford knew of and disregarded a serious risk to his health and safety, but does not allege how they would have had this knowledge or how or when they were allegedly notified of any failure to provide Plaintiff his medication.   Plaintiff has failed to allege any facts from which I can plausibly determine that Wexford knew of or turned a blind eye to a deliberate indifference to his serious medical needs.   Therefore, Plaintiff's claim against Wexford will be dismissed.

**B.      Defendants' Motion to Dismiss for Failure to Prosecute**

Doctors Landsberg and Popick along with Wexford Health Network also seek dismissal of Plaintiff's Amended Complaint pursuant to Local Rule 7.6 and Rule 41(b) of the Federal Rules of Civil Procedure on the basis that Plaintiff neither responded to their

May 9, 2014 motion to dismiss, nor submitted a motion for an extension of time to file a response.  (Doc. 48.)  Rule 41(b) provides that "[i]f the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it."  Fed. R. Civ. P. 41(b).  However, upon review of the docket, it appears that plaintiff has attempted to litigate his case, as he filed a response to the DOC Defendants' motion to dismiss, albeit untimely and not in response to the Medical Defendants and Wexford's motion to dismiss.  Moreover, dismissals with prejudice or defaults are "drastic sanctions, termed 'extreme' by the Supreme Court," to be reserved for cases only where it is truly warranted.  *Poulis v. State Farm Fire & Cas. Co.*, 747 F.2d 863, 868 (3d Cir. 1984).  Because Plaintiff appears to have litigated his case and because I do not find that this is a case where dismissal based on failure to prosecute is warranted, particularly given the fact that Plaintiff is appearing *pro se*, I will deny Defendants' motion to dismiss for failure to prosecute.

**C.      Plaintiffs' Motion to Appoint Counsel**

On August 20, 2015, Plaintiff filed his third motion to appoint counsel.  (Doc. 54.)  On January 7, 2014, I denied his first motion to appoint counsel (Doc. 10) and on May 5, 2014, I denied his second motion to appoint counsel (Doc. 34).

A *pro se* litigant proceeding *in forma pauperis* does not have a constitutional or statutory right to representation by counsel.  *Montgomery v. Pinchak*, 294 F.3d 492, 498 (3d Cir. 2002).  However, Congress has granted district courts the discretion to "request an attorney to represent any person unable to afford counsel."  28 U.S.C. § 1915(e)(1).  A district court has "broad discretion" to determine whether counsel should be appointed.  *Montgomery*, 294 F.3d at 498.  The appointment of counsel is made only "upon a showing of special circumstances indicating the likelihood of substantial prejudice to [plaintiff] resulting . . . from [plaintiff's] probable inability without such assistance to present the facts and legal issues to the court in a complex but arguably meritorious case."  *Smith-Bey v. Petsock*, 741 F.2d 22, 26 (3d Cir. 1984).

Plaintiff cites his limited access to the law library and the strong merits of his underlying claims as reasons he should be appointed counsel. (*See* Doc. 55, at 2-3.) As I stated in my order denying Plaintiff's second motion to appoint counsel, Plaintiff's motion to appoint counsel is "premised on the same factual circumstances under which the majority of *pro se* incarcerated litigants operate: indigent status; lack of legal training; and limited access to the law library." (Doc. 34, at 3.)  These facts alone do not warrant the appointment of counsel.  Plaintiff is clearly literate, and while it is true that he is incarcerated, he appears capable of litigating this action on his own.  Additionally, Plaintiff's concern for his ability to argue his case at trial (*see* Doc. 55, ¶ 5) is premature. If future proceedings demonstrate the need for counsel, the matter may be reconsidered either *sua sponte* or pursuant to a properly filed motion.  Until then, however, I will deny Plaintiff's motion to appoint counsel.

**D.      Leave to Amend**

The Third Circuit has instructed that if a complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile.  *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).  Here, there is nothing to suggest that an amendment of Plaintiff's claims would be futile, nor is there any basis to believe it would be inequitable. Plaintiff will therefore be granted twenty-one (21) days from the date of entry of this Memorandum to amend his complaint.  Otherwise, the claims will be dismissed with prejudice.

## IV. Conclusion

For the above stated reasons, I will adopt in part and reject in part the Report and Recommendation.  All of Plaintiff's claims against the DOC Defendants, Physician Assistant Daya, and Wexford Health Network will be dismissed without prejudice.  Plaintiff's claims against Medical Defendants Landsberg and Popick regarding their failure to (1) maintain updated records on Plaintiff and (2) order proper follow-up appointments to evaluate Plaintiff's condition will also be dismissed without prejudice.  Plaintiff shall have twenty-one

(21) days from the date of entry of this Memorandum to re-plead these claims. Otherwise, they will be dismissed with prejudice. However, Medical Defendants Landsberg and Popick's motion to dismiss Plaintiff's claim regarding their failure to reorder Plaintiff's medications will be denied. Defendants Wexford Health Network and Medical Defendants Landsberg and Popick's motion to dismiss for failure to prosecute will be denied. Plaintiff's third motion to appoint counsel will also be denied.

   An appropriate order follows.


January 4, 2016           /s/ A. Richard Caputo
Date                A. Richard Caputo
                 United States District Judge