## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

RICHARD ALAN MCANULTY,

                Plaintiff

    v.

SUPT. VINCENT MOONEY, et al.,

                Defendants

CIVIL ACTION NO. 3:13-CV-03104

(CAPUTO, J.)
(MEHALCHICK, M.J.)

### REPORT AND RECOMMENDATION

    Presently before the Court is *pro se* prisoner- Plaintiff Richard Alan McAnulty's second amended complaint submitted in accordance with the District Court's Memorandum and Order dated January 4, 2016, permitting Plaintiff leave to amend his pleadings concurrently with its disposition of a number of motions to dismiss filed by Defendants. Having conducted its statutory screening review of the amended complaint, the undersigned respectfully recommends the amended complaint (Doc. 64, at 13) be **dismissed with prejudice** pursuant to 28 U.S.C. § 1915(e)(2)(B) (ii), 28 U.S.C. § 1915A(b)(1), and 42 U.S.C. § 1997e(c)(1).

### I.   BACKGROUND

    This 42 U.S.C. § 1983 civil rights action was initiated upon the filing of a complaint in this matter on December 30, 2013 by Plaintiff Richard Alan McAnulty, an inmate currently incarcerated at the State Correctional Institution in Coal Township, Pennsylvania, alleging several violations of his rights under the Eighth and Fourteenth Amendments to the United States Constitution against eleven (11) Department of Corrections employees, the prison's contracted medical provider, and three (3) of the contracted medical provider's employees. An amended complaint was subsequently filed, wherein the Plaintiff alleged that the

Superintendent Vincent Mooney, Superintendent David A. Varano, Deputy Superintendent Michael Miller, Deputy Superintendent Anthony Luscavage, Unit Manager Charles Custer, Unit Manager Ms. Shaffer, Registered Nurse Supervisor Donna Dressler,[1] Health Care Administrator Kathryn McCarty,[2] Grievance Counselor Trish Kelley, and Counselor D. Picarelli (the "DOC Defendants"); Defendant Wexford Health Network; and Defendants M. Landsberg, A. Popick, and J. Daya (the "Medical Defendants"), failed to provide proper medical care for his chronic and ongoing illnesses in violation of the Eighth and Fourteenth Amendments.[3] (Doc. 19). Specifically, Plaintiff challenged Defendants' failure to refill his prescriptions, schedule follow-up appointments, maintain accurate medical records, provide him with properly fitting diabetic shoes and socks, and transfer him to SCI-Laurel Highlands. (Doc. 19). Plaintiff also contested the refusal of Defendants to accommodate his non-medical requests, such as allowing him additional time in the law library, assisting him with locating a confiscated storage box containing legal materials, facilitating a conference call with the Department of Justice, and mailing various legal documents via certified mail. (Doc. 19).

---

[1] While Registered Nurse Supervisor Donna Dressler is authorized to dispense medications and initially assess inmate patients, her involvement in the instant action is limited to her responses to grievances submitted by Plaintiff.

[2] Health Care Administrator Kathryn McCarty is neither a prison doctor nor on the medical staff.

[3] As a note, Plaintiff filed an amended complaint that the Clerk of Court inadvertently docketed as a new civil action. *See McAnulty v. Mooney, et al.,* 3:14-CV-0622. On April 3, 2014, the Court directed the Clerk of Court to consolidate both actions, as both complaints involved common questions of law and fact. (Doc. 18).

A number of motions to dismiss were filed on April 15, 2014; April 22, 2014; May 9, 2014; and December 30, 2014, respectively. (Doc. 24; Doc. 30; Doc. 37; Doc. 47). On July 21, 2015, the undersigned Magistrate Judge entered a Report and Recommendation, recommending that Defendants' motions dated April 15, 2014; April 22, 2014; and May 9, 2014 be granted (Doc. 24; Doc. 30; Doc. 37), that Defendants' December 30, 2014, motion to dismiss for failure to prosecute be denied as moot (Doc. 47), and that Plaintiff's claims be dismissed as to all named Defendants. (Doc. 51). The Court recommended, however, that Plaintiff be permitted leave to amend his complaint to set forth an Eighth Amendment deliberate indifference claim against the Medical Defendants, and Wexford Health Network. (Doc. 51, at 22). On January 4, 2016, the District Court entered a Memorandum and Order adopting in part and rejecting in part the undersigned's Report and Recommendation. Specifically, the District Court departed from the undersigned's Report and Recommendation with respect to the recommendation that Defendants Doctors Landsberg and Popick be dismissed from the action with leave to amend, as the District Court found that Plaintiff adequately stated a claim against these Defendants for failure to reorder his prescription medications. In its Memorandum and Order, the District Court permitted Plaintiff an opportunity to re-plead his claims in a second amended complaint.

On March 11, 2016, the Court received and docketed a motion paper entitled "Declaration in Support of Plaintiff['s] Motion for the Appointment of Counsel," that was submitted together with approximately 137 pages of miscellaneous material. (Doc. 64). While Plaintiff's declaration in support of his motion for appointment of counsel is plainly untimely, given that the District Court previously denied his motion for appointment of counsel in its

Memorandum and Order dated January 4, 2016, the extraneous documents appended to this declaration contain what appears to be Plaintiff's second amended complaint as well as a number of relevant exhibits that shed light on his claims.

In Plaintiff's second amended complaint, Plaintiff asserts violations of his rights under the First, Eighth, and Fourteenth Amendments to the United States Constitution resulting from Defendants' failure to provide proper medical care for his chronic and ongoing illnesses; namely, diabetes, high blood pressure, cervical pain, hearing loss, and fibromyalgia. Upon review of this second amended complaint, it is clear that Plaintiff has merely repeated the factual allegations asserted against the exact same Defendants contained within his amended complaint, albeit  in a slightly condensed form and in a slightly different order.

Having conducted its statutory screening review of the second amended complaint in accordance with 28 U.S.C. § 1915(e)(2)(B)(ii), 28 U.S.C. § 1915A(b)(1), and 42 U.S.C. § 1997e(c)(1), the Court now enters this Report and Recommendation.

## II.   STANDARD OF REVIEW

Under 28 U.S.C. § 1915A, the Court is obligated to screen a civil complaint in which a prisoner is seeking redress from a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a); *James v. Pa. Dep't of Corr.*, 230 F. App'x 195, 197 (3d Cir. 2007) (not precedential). The Court must dismiss the complaint if it "fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915A(b)(1). The Court has a similar obligation with respect to actions brought *in forma pauperis* and actions concerning prison conditions. *See* 28 U.S.C. § 1915(e)(2)(B)(ii); 42 U.S.C. § 1997e(c)(1). *See generally Banks v. Cnty. of Allegheny*, 568 F. Supp. 2d 579, 587–89 (W.D. Pa. 2008) (summarizing prisoner litigation screening

procedures and standards). "The [C]ourt's obligation to dismiss a complaint under [these] screening provisions is not excused even after defendants have filed a motion to dismiss." *Banks,* 568 F. Supp. 2d at 589. In performing this screening function, a district court applies the same standard applied to motions to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Mitchell v. Dodrill*, 696 F. Supp. 2d 454, 471 (M.D. Pa. 2010); *Banks*, 568 F. Supp. 2d at 588.

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The United States Court of Appeals for the Third Circuit has noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), continuing with our opinion in *Phillips* [*v. County of Allegheny*, 515 F.3d 224 (3d Cir. 2008)] and culminating recently with the Supreme Court's decision in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 209–10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). A court "need not credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). Additionally, a court need not assume that a plaintiff can prove facts that the plaintiff has not alleged. *Associated*

*Gen. Contractors of Cal. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983). In order to state a valid cause of action a plaintiff must provide some factual grounds for relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). When ruling on a motion to dismiss, a trial court must assess whether a complaint states facts upon which relief can be granted, and should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

In deciding a Rule 12(b)(6) motion, the court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).[4] Additionally, a document filed *pro se* is "to be liberally construed." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A *pro se* complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be

---

[4] In addition to the second amended complaint in this matter (Doc. 64), the Court has considered various documents explicitly incorporated into the second amended complaint by reference and attached to the second amended complaint. The Court has also considered certain prison regulations that are matters of public record of which the Court may properly take judicial notice in ruling on a Rule 12(b)(6) motion. *See* Fed. R. Evid. 201; *Christman v. Skinner*, 468 F.2d 723, 726 (2d Cir. 1972); *Hodges v. Klein*, 421 F. Supp. 1224, 1233 (D.N.J. 1976), *aff'd*, 562 F.2d 276 (3d Cir. 1977) (per curiam); *see also Wakeley v. Giroux*, No. 1:12-CV-2610, 2014 WL 1515681, at *11 (M.D. Pa. Apr. 15, 2014) (taking judicial notice of applicable DOC policy). Consideration of these materials does not require conversion of this Rule 12(b)(6) motion into a Rule 56 motion for summary judgment. *See* Fed. R. Civ. P. 12(d); *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014).

dismissed for failure to state a claim if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972). The Third Circuit has instructed that if a complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).

III.   DISCUSSION

A.   DEPARTMENT OF CORRECTIONS DEFENDANTS

**1.   Lack of Personal Involvement**

In Plaintiff's second amended complaint, Plaintiff alleges that Superintendent Vincent Mooney, Superintendent David A. Varano, Deputy Superintendent Michael Miller, Deputy Superintendent Anthony Luscavage, Unit Manager Charles Custer, Unit Manager Ms. Shaffer, Registered Nurse Supervisor Donna Dressler,[5] Health Care Administrator Kathryn McCarty,[6] Grievance Counselor Trish Kelley, and Counselor D. Picarelli failed to intervene or responded inappropriately to his numerous request slips and grievances.

"A defendant in a civil rights action 'must have personal involvement in the alleged wrongs to be liable,' and 'cannot be held responsible for a constitutional violation which he or

---

[5] While Registered Nurse Supervisor Donna Dressler is authorized to dispense medications and initially assess inmate patients, her involvement in the instant action is limited to her responses to grievances submitted by Plaintiff.

[6] Health Care Administrator Kathryn McCarty is neither a prison doctor nor on the medical staff.

she neither participated in nor approved.'" *Baraka v. McGreevey,* 481 F.3d 187, 210 (3d Cir. 2007) (internal citations omitted). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir. 1988). The filing of a grievance is not sufficient to show the actual knowledge required for personal involvement. Moreover, participation in the "after-the-fact" review of a grievance is not enough to establish personal involvement. *See, e.g., Brooks v. Beard,* 167 F. App'x. 923, 925 (3d Cir. 2006) (not precedential)  (allegations that prison officials and administrators responded inappropriately to inmate's later-filed grievances do not establish the involvement of those officials and administrators in the underlying deprivation); *see also Wilson v. Horn,* 971 F. Supp. 943, 947 (E.D. Pa. 1997), *aff'd,* 142 F.3d 430 (3d Cir. 1998) (prison officials' failure to respond to inmate's grievance does not state a constitutional claim).

Further, this Court is guided by the well-established principle that inmates "do not have a constitutional right to a prison grievance system." *Arroyo v. Li,* No. 3:CV-13-1506, 2014 WL 4294506, at *3 (M.D. Pa. Aug. 28, 2014) (citing *Jones v. N.C. Prisoners Labor Union,* 433 U.S. 119, 137–38 (1977); *Speight v. Sims,* 283 F. App'x 880 (3d Cir. Jun 30, 2008)). Accordingly, "any attempt by [p]laintiff to establish liability against [a prison official or] health care administrator solely based upon the substance or lack of response to his institutional grievances does not by itself support a constitutional due process claim." *Id.* (citing *Alexander v. Gennarini,* 144 F. App'x 924, 925 (3d Cir. 2005) (involvement in post-incident grievance process not a basis for § 1983 liability)); *Okey v. Strebig,* 531 F. App'x 212, 215 (3d Cir. 2013) *cert. denied,* 134 S. Ct. 446 (2013) ("The failure of a prison official to provide a favorable response to an inmate grievance is not a federal constitutional violation.") (citations omitted).

Upon review of the second amended complaint, it is clear that Plaintiff has largely repeated the factual allegations asserted in his amended complaint without any further factual enhancement. Indeed, Plaintiff offers no facts demonstrating the personal involvement of these prison officials and administrators in the alleged misconduct. Rather, Plaintiff continues to predicate Defendants' liability on a lone, insufficient averment: that these Defendants ignored or responded inappropriately to his request slips and grievances regarding his medical treatment. Such allegations neither establish personal involvement on the part of these Defendants nor confer any substantive constitutional rights upon Plaintiff. Because Plaintiff has failed to correct the pleading deficiencies previously identified by this Court by proffering facts that demonstrate these Defendants' personal involvement in the alleged unconstitutional conduct, it is respectfully recommended that DOC Defendants Superintendent Vincent Mooney, Superintendent David A. Varano, Deputy Superintendent Michael Miller, Deputy Superintendent Anthony Luscavage, Unit Manager Charles Custer, Unit Manager Ms. Shaffer, Registered Nurse Supervisor Donna Dressler, Health Care Administrator Kathryn McCarty, Grievance Counselor Trish Kelley and D. Picarelli be dismissed from this action with prejudice for failure to state a claim.

### 2. Plaintiff fails to state a claim against DOC Defendants for refusing to accommodate his medical requests

Even assuming, *arguendo*, that Plaintiff had properly alleged personal involvement on the part of the DOC Defendants, Plaintiff has failed to demonstrate that Defendants were deliberately indifferent to his medical needs through their awareness of his medical conditions and their failure to secure him proper treatment. Indeed, if a prisoner is being treated by medical personnel, non-medical officials and healthcare administrators cannot be considered

deliberately indifferent for failing to intervene in the medical treatment or respond directly to the prisoner's medical complaints. *See Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993) (Prison administrators cannot be deliberately indifferent "simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor"); *Gould v. Wetzel*, 547 F. App'x 129, 132 (3d Cir. 2013) (not precedential). Hence, "[p]rison officials who are not physicians are entitled to defer to the medical judgment of staff physicians, . . . and an administrator does not become responsible for the inmate's medical treatment simply by virtue of reviewing an inmate grievance." *Smith v. O'Boyle*, 251 F. App'x 87, 89 (3d Cir. 2007). Accordingly, Plaintiff's claims against the DOC Defendants stemming from an alleged failure to accommodate Plaintiff's medical requests must be dismissed.

### 3. Plaintiff's other non-cognizable claims asserted against DOC Defendants that are unrelated to his medical treatment

In his second amended complaint, Plaintiff continues to assert that a number of DOC Defendants violated his rights under the First, Eighth, and Fourteenth Amendments by failing to accommodate his non-medical requests and engaging in misconduct unrelated to his medical care. Specifically, Plaintiff alleges that Defendants: failed to maintain an accurate visitors list; ignored Plaintiff's requests to facilitate a telephone conference with the United States Department of Justice; conducted conversations with other inmates about their release in the Plaintiff's presence; refused to transfer him to the prison of his choosing; declined to send his legal documents via certified mail; rejected his demand for an updated copy of the personnel directory; confiscated his legal storage box; denied his requests for a replacement mattress; and verbally harassed him—claims that were previously recommended for dismissal in the Court's Report and Recommendation addressing Plaintiff's amended complaint. (Doc. 64, at 20).

Turning first to Plaintiff's contentions with Defendants' failure to input a visitor, Alan Blose, to his authorized visiting list, such a claim does not rise to the level of a constitutional violation.  Indeed, Plaintiff's claim is facially deficient, as it is well established that "there is not a constitutional right to visitation for convicted prisoners, their family and spouses." *Neumeyer v. Beard*, 301 F. Supp. 2d 349, 351 (M.D. Pa. 2004), *aff'd*, 421 F.3d 210 (3d Cir. 2005); *see also Flanagan v. Shively*, 783 F. Supp. 922, 934 (M.D.Pa.1992) ( "Inmates have no constitutional right to visitation . . . .  Prison authorities have discretion to curtail or deny visitation if they deem appropriate, and no due process right is implicated in the exercise of that discretion."); *Kentucky Dept. of Corr. v. Thompson,* 490 U.S. 454, 460 (1989) (holding that there is no substantive due process right to "unfettered visitation").  Moreover, the grievances referenced in Plaintiff's pleadings and attached as exhibits to his second amended complaint reveal that on September 5, 2012, Alan Blose was approved by the superintendent to be added to the authorized visitor list as required by prison policy due to Alan Blose's criminal background. [7] Upon obtaining the superintendent's authorization, Plaintiff was instructed to submit an updated visiting form. (Doc. 64, at 92). However, Plaintiff did not submit the completed form until December 3, 2012. (Doc. 64, at 92). Thus, any challenge Plaintiff may have with respect to the delay in updating his visiting list and the refusal to permit Alan Blose to visit prior to Plaintiff submitting the updated visiting form and during the time officials were processing the

-------------------

[7] *See* DC-ADM 812, Inmate Visiting Privileges, at 1-8 (Sept. 10, 2009), available at http://www.cor.pa.gov/Administration/General%20Information/Documents/DOC%20Policies/812%20Inmate%20Visiting%20Privileges.pdf.

visiting form is entirely unavailing, given Plaintiff's contributions to that delay.  Accordingly,

Plaintiff's claims that he was denied certain visitation rights due to a failure in maintaining an

accurate visitation list does not entitle him to relief under § 1983.[8]

Plaintiff's claim that his requests to facilitate a telephone conference with the United

States Department of Justice were ignored also raises no issues of constitutional concern.

Specifically, Plaintiff's First Amendment right to communication or association has not been

impermissibly denied given that he has not been restricted from placing a call to the

Department of Justice himself. Indeed, Plaintiff is free to call the Department of Justice so long

as it conforms to the DOC's policy statement governing telephone privileges.[9] Moreover,

Plaintiff retains, as an alternative means of communicating with the Department of Justice, the

regular mail. Accordingly, the second amended complaint presents no facts supporting a

violation of Plaintiff's constitutionally- or federally-protected rights.

---

[8] To the extent Plaintiff attempts to assert a First Amendment retaliation claim arising out Defendants' restriction of Plaintiff's visitation rights with respect to Alan Blose, Plaintiff has failed to offer sufficient allegations that: (1) he was engaged in a constitutionally protected conduct, (2) the retaliatory action taken against him was sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link exists between the constitutionally protected conduct and the retaliatory action. *Thomas v. Independence Twp.*, 463 F.3d 285, 296 (3d Cir. 2006); *see also Cardenas v. Massey*, 269 F.3d 251, 263 (3d Cir. 2001); *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 279 (3d Cir. 2000).

[9] *See* DC-ADM 818, Automated Inmate Telephone System, at 1-8 (April 25, 2012), available at http://www.cor.pa.gov/Administration/General%20Information/Documents/DOC%20Policies/818%20Automated%20Inmate%20Telephone%20System.pdf.

With respect to his claim that Defendants conversed with inmates regarding their parole conditions and arrangements for their release in the presence of the Plaintiff, such a claim entirely lacks merit. Indeed, Plaintiff has no legitimate expectation of privacy in other inmate's conditions of release. Equally significant, no court in this Circuit has recognized a constitutional right to control the dissemination of information pertaining to an inmate's parole. *See Doe v. Delie*, 257 F.3d 309, 316 (3d Cir. 2001) (holding that an inmate only enjoys a right of privacy in his own medical records). Hence, such conduct does not raise issues of constitutional import.

Plaintiff's contention that Defendants refused to transfer him to a prison that could more effectively tend to his disabilities is likewise unavailing, as it is well settled "that prisoners have no inherent constitutional right to placement in any particular prison, to any security classification, or to any particular housing assignment." *Crawford v. While*, No. 14-CV-1682, 2014 WL 4639933, at *6 (M.D. Pa. Sept. 16, 2014) (citing *See Olim v. Wakinekona,* 461 U.S. 238, 245 (1983); *Meachum v. Fano,* 427 U.S. 215 225 (1976)) (citations omitted). Moreover, Plaintiff does not have a constitutionally protected right to have his mail sent certified, as he so claims. *Schack v. Wainwright,* 391 F.2d 608 (5th Cir.1968); *see also Cotten v. Schotten,* 114 F.3d 1186 (6th Cir. 1997) (table case) ("[T]here is no constitutional right to receive a return receipt in the mail."); *Snoderly v. Osborne,* No. 4:08CV–P149–M, 2010 WL 816795, at *2 (W.D. Ky. Mar. 4, 2010) ("There is no constitutional right to send mail certified or return receipt requested."); *Larson v. Frossard,* No. 86 C 6154, 1987 WL 6284, at *2 (N.D. Ill. Jan. 30, 1987) ("[I]n the present case, plaintiff has not demonstrated that certified mail was necessary or that alternative means, such as regular mail, were insufficient. The Court therefore finds plaintiff's allegations

fail to state a claim."); *Falzerano v. Collier,* 535 F.Supp. 800, 803–04 (D.N.J.1982) ("The denial of certified mail, return receipt requested, at State expense also falls far short of a constitutional issue. Ordinary mail is sufficient for access to the courts. If, for reasons of his own, a prisoner wants that form of mailing as a mode of proof, the cost is not so high as to put it beyond the reach of an indigent.").

Likewise, Defendants' failure to provide Plaintiff with an updated copy of the prison personnel directory so that he could locate "the full names of defendants listed in this action," and Defendants' refusal to return an "illegally confiscated legal storage box" does not amount to a deprivation of Plaintiff's constitutional right of access to the courts because Plaintiff cannot establish that he was actually injured in the form of being prevented from pursuing a "nonfrivolous" or "arguable" underlying claim." *Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008); *see also Lyons v. Sec'y of Dep't of Corr.*, 445 F. App'x 461, 463 (3d Cir. 2011) (not precedential). As a corollary to that principle, Plaintiff does not have a due process claim arising out of the confiscation of his legal property, as an adequate post-deprivation state remedy was available to Plaintiff. *Tillman v. Lebanon Cnty. Corr. Facility*, 221 F.3d 410, 422 (3d Cir. 2000); *see Reid v. Seville*, No. 96–2577, 1996 WL 421901, at *3-4 (E.D. Pa. July 19, 1996) (holding that because Pennsylvania tort law offers a remedy for prison officials' unlawful deprivation of inmate property, inmate failed to state a constitutional claim); *Austin v. Lehman*, 893 F. Supp. 448, 454 (E.D. Pa. 1995) (finding that both inmate grievance procedure and state tort law action constituted adequate post-deprivation remedies).

Plaintiff's dissatisfaction with having received a used mattress that causes him "great discomfort" as opposed to the new mattress that he requested—d spite being informed that the

prison does not have an unlimited source of mattresses he can chose from—does not plausibly give rise to any constitutional violation. (Doc. 64, at 59); *Milhouse v. Gee,* No. 09–2134, 2011 WL 3627414, *13 (M.D. Pa. Aug.17, 2011) (noting that even denying an inmate a mattress "for a short period of time does not rise to the level of a constitutional violation").

Lastly, Plaintiff's allegations that Defendant C.O. Shultz, upon conducting a sound test of the housing unit's announcement system to "determin[e] the extent of Plaintiff['s] hearing difficulties[,] . . . call[ed] Plaintiff out of his cell and in a demeaning, derogatory, and [in an] ag[g]ressive manner repeatedly pointed out the locations of the two speakers on the unit," in an effort to humiliate Plaintiff, are entirely insufficient to state a claim. ( Doc. 64, at 22). "[I]t is well established that verbal harassment or threats . . . will not, without some reinforcing act accompanying them, state a constitutional claim." *Maclean v. Secor*, 876 F. Supp. 695, 698 (E.D. Pa. 1995); *Booth v. King*, 228 F. App'x 167, 172 (3d Cir. 2007) (not precedential) ("[A]bsent any allegation of physical harm, the [defendant's] verbal threats do not amount to a constitutional violation.") (citing *Ivey v. Wilson,* 832 F.2d 950, 954–55 (6th Cir. 1987) (holding that verbal abuse, alone, is not an Eighth Amendment violation)); *see also Balliet v. Whitmire,* 626 F. Supp. 219 (M.D. Pa. 1986) (noting that use of profane and vulgar language does not amount to a civil rights violation).

Accordingly, as Plaintiff fails to state a cognizable claim against the DOC Defendants, it is respectfully recommended that all claims against the DOC Defendants be dismissed with prejudice.

B. Medical Defendants

Plaintiff asserts in his second amended complaint that Medical Defendants Doctor M. Landsberg, Doctor A. Popick, and Physician Assistant J. Daya were deliberately indifferent to his chronic and ongoing illnesses, in violation of the Eighth and Fourteenth Amendments. (Doc. 64).

As an initial matter, it appears that Plaintiff continues to raise a claim under the Eighth *and* Fourteenth Amendments based upon the same conduct—namely, that Defendants were deliberately indifferent to Plaintiff's medical needs, despite this Court advising him that doing so is improper. To reiterate, "because the Eighth Amendment provides an explicit source of protection for deliberate indifference to serious medical needs, Plaintiff's claim is preempted by the Eighth Amendment and should not be analyzed as a substantive due process claim under the Fourteenth Amendment." *Sadelmyer v. Peltzer*, No. 2: 12-CV-1785, 2013 WL 4766517, at *6 (W.D. Pa. Sept. 4, 2013). As Plaintiff's Fourteenth Amendment claim fails as a matter of law, this Court proceeds to whether Plaintiff has set forth a cognizable Eighth Amendment claim based on the alleged misconduct.

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain," which includes "deliberate indifference to serious medical needs of prisoners." *Dennis v. Jensen*, No. 10–1486, 2013 WL 2245144, at *3 (M.D. Pa. May 20, 2013) (quoting *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976)). Such a claim requires that a plaintiff allege "(i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003); *see also West v. Keve*, 571 F.2d

158, 161 (3d Cir. 1978) ("This standard is two-pronged. It requires deliberate indifference on the part of prison officials and it requires the prisoner's medical needs to be serious.").

A serious medical need exists if failure to treat such condition would constitute a "denial of the minimal civilized measure of life's necessities." *Farmer v. Brennan*, 511 U.S. 824, 825 (1994). As the Third Circuit has explained:

> [T]he concept of a serious medical need . . . has two components, one relating to the consequences of a failure to treat and one relating to the obviousness of those consequences. The [inmate's] condition must be such that a failure to treat can be expected to lead to substantial and unnecessary suffering, injury, or death. Moreover, the condition must be 'one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention.'

*Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1023 (3d Cir. 1991) (quoting *Monmouth Cnt. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987)).

Here, Plaintiff alleges that he suffers from "major cervical damage, fibromyalgia, high blood pressure, diabetes, hearing loss and chronic geriatric [illnesses]." (Doc. 1, at 15). This Court assumes for purposes of this analysis that Plaintiff has a serious medical need. Accordingly, the Court turns to whether these Defendants exhibited deliberate indifference towards his illnesses.

Deliberate indifference may be manifested by an "intentional refusal to provide medical care, delayed medical treatment for non-medical reasons, a denial of prescribed medical treatment, or a denial of reasonable requests for treatment that results in suffering or risk of injury." *Beckett v. Dep't. of Corr.*, No. 10–0050, 2011 WL 4830787, at *11 (M.D. Pa. Oct.12, 2011). However, prison medical authorities are given considerable latitude in the diagnosis and treatment of inmate patients. *Inmates of Allegheny Cnty. Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979). "[M]ere allegations of malpractice do not raise issues of constitutional import." *Lanzaro,*

834 F.2d at 346. A mere difference of opinion between the prison medical staff and the inmate regarding the diagnosis or treatment received by the inmate does not constitute deliberate indifference. *Lanzaro*, 834 F.2d at 346; *Farmer v. Carlson*, 685 F. Supp. 1335, 1339 (M.D. Pa. 1988). Indeed, "[m]ere medical malpractice, negligence, and courses of treatment inconsistent with the desires of the prisoner . . . do not constitute deliberate indifference to serious medical needs." *Lopez v. Corr. Med. Servs., Inc.*, 499 F. App'x 142, 146 (3d Cir. 2012) (not precedential) (citing *Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004)). A prison doctor's failure to perform additional diagnostic tests does not constitute cruel and unusual punishment. *See Estelle*, 429 U.S. at 107. The key question is whether the defendant has provided the inmate with some type of treatment, regardless of whether it is what the inmate desires. *Farmer*, 685 F. Supp. at 1339; *see, e.g., Brown v. Borough of Chambersburg,* 903 F.2d 274, 278 (3d Cir. 1990) ("[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights.").

### 1.  Doctors Landsberg and Popick

Plaintiff provides the following averments in his second amended complaint in support of his deliberate indifferent claims against Doctors Landsberg and Popick:

> 46. On 6-6-13 Defendant Doctor M. Landsberg [f]ailed to properly reorder required chronic medications for the Plaintiff and [f]ailed to maintain truly updated medical records on Plaintiff. On 6-6-13 Defendant Landsberg [f]ailed to properly order a sixty day follow-up appointment to evaluate Plaintiff[']s [c]ondition. Exhibits 69

> 47. On 6-30-13, 7-9-13 Defendant Doctor Popick failed to properly reorder required chronic mediations for Plaintiff[.] Defendant Popick also failed to maintain true updated medical records on Plaintiff's pain levels and hearing difficulties.

(Doc. 69, at 21).

- 18 -

It is clear that Plaintiff reiterates the exact same claims against Defendants Landsberg and Popick in this second amended complaint that he asserted in his amended complaint. Specifically, Plaintiff challenges the failure of these Defendants to properly refill his chronic medications, schedule him for a follow-up appointment, and maintain up-to-date medical records. However, as this Court previously advised Plaintiff, such claims do not rise to the level of deliberate indifference, as these allegations are not supported by the grievances and request slips attached to Plaintiff's second amended complaint, of which this Court may undoubtedly consider in performing this screening function. (Doc. 69).

For example, Plaintiff claims that Defendants refused to provide him with prescription and over-the-counter medication refills. However, the grievances and request slips demonstrate that Defendants prescribed the requested medications to Plaintiff, and that Plaintiff was clearly aware of and yet failed to comply with the prison protocol requiring inmates to submit a request for specific chronic medication when fewer than seven pills remained in the prescription. (Doc. 64-1, at 8-9). Thus, Plaintiff fails to demonstrate through the allegations contained in his second amended complaint and the supporting documents appended to his second amended complaint that these physicians "acted intentionally to withhold from him his prescribed medication[s] or [were] in any way responsible for the delay in obtaining a refill of his medication." *Baskerville v. Blot*, 224 F. Supp. 2d 723, 735 (S.D.N.Y. 2002). Accordingly, to the extent Plaintiff claims that Defendants were deliberately indifferent to his medical needs by failing to *automatically* prescribe chronic and over-the-counter refills in contravention of prison policy requiring Plaintiff to submit a sick call request for his chronic medications, such claims lack merit given Plaintiff's failure to comply with prison protocol.

Plaintiff's allegations that he was deprived of medical care when Defendants failed to schedule him for a follow-up appointment does not constitute deliberate indifference to a serious medical need when considering the second amended complaint's obvious pleading deficiencies. Specifically, Plaintiff does not assert any adverse consequences resulting from any purported delay in scheduling a follow-up appointment. Aside from Plaintiff's fatal pleading deficiencies, Plaintiff's exhibits attached to his second amended complaint actually belie any claim that Defendants acted with deliberate indifference in their alleged failure to schedule him for a follow-up appointment, as the exhibits reflect that Plaintiff was provided continued access to medical care. (*See e.g.,* Doc. 64, at 44; Doc. 64, at 49; Doc. 64, at 50; Doc. 64-1, at 6). Indeed, Plaintiff appears to have received numerous appointments, examinations, and treatments for his medical diagnoses, and was never prevented from reporting to sick call when he had a specific complaint. Accordingly, this Court recommends dismissal of these claims.

Plaintiff also alleges that these Medical Defendants engaged in inaccurate and substandard medical record-keeping. However, Plaintiff again fails to set forth any specific factual allegations to support his conclusory deliberate indifference claim with respect to his medical records as required by *Iqbal*. *Ashcroft v. Iqbal,* 556 U.S. 662 (2009). Indeed, he has not provided a sufficient factual basis to "'nudge' . . . his claim . . . 'across the line from conceivable to plausible.'" *Id.* at 680 (quoting *Bell Atlantic v. Twombly,* 550 U.S. 544, 570 (2007)). Plaintiff's allegations fail to specify the inaccuracies contained within the medical record, and moreover, fail to show that he sustained any sort of serious physical injury as a result of the purported inaccuracies. As Plaintiff's second amended complaint fails to provide a sufficient basis to

support a claim that the Defendants acted with deliberate indifference, this Court recommends dismissal of such claims.

### 2. Physician Assistant J. Daya

Plaintiff alleges that Defendant Physician Assistant J. Daya was deliberately indifferent to his medical needs because she falsified a grievance response by representing that a previously- conducted audiogram was normal, failed to schedule Plaintiff for an evaluation to assess the fit of his diabetic shoes, and denied Plaintiff's request for diabetic socks.[10]

With respect to Plaintiff's assertion that Defendant Daya falsified a response to Grievance Number 409383 dated May 3, 2012, that response was drafted by Defendant Luscavage, who noted that "a previous audiogram was normal and, according to the PA, [Plaintiff] had no problems hearing her when she asked . . . questions." (Doc. 64, at 40). It does not appear that Defendant Daya participated in drafting the response or was even the physician assistant who evaluated Plaintiff. Nevertheless, even assuming Defendant Daya misinformed Defendant Luscavage that an audiogram was previously performed based on her review of his medical chart, such a mishap does not amount to deliberate indifference to Plaintiff's medical needs, as Plaintiff has failed to articulate how this alleged misrepresentation resulted in the

---

[10] It is unclear why Plaintiff alleges that Defendant Daya denied his request for diabetic socks, given that Defendant McCarthy responded to Plaintiff's inmate request that was addressed specifically to her. (Doc. 64, at 45). Defendant McCarthy notes in her response that there is "no such thing as diabetic socks or thermals" and suggests that Plaintiff "purchase thermals through [the] commissary." (Doc. 64, at 45). Nevertheless, even assuming that Defendant Daya was involved in, or knew of, Plaintiff's request and that such a request fell within the ambit of her authority, the second amended complaint does not demonstrate the she intentionally refused to provide such medical treatment.

worsening of his condition.[11] Moreover, assuming Defendant Daya was the physician assistant who evaluated Plaintiff's hearing capabilities, to the extent Plaintiff merely disagrees with the physician assistant's diagnoses of the hearing test as normal, such allegations are not actionable under the Eighth Amendment.

Further, Plaintiff's complaints with respect to the scheduling of an appointment to address his diabetic shoes must fail as well, as the response to Grievance 409383 indicates that Plaintiff has been "scheduled to see the physician to discuss diabetic shoes." (Doc. 64, at 40). Assuming it was Defendant's Daya's responsibility to schedule an appointment, the appointment was in fact scheduled. Nevertheless, even assuming that the appointment was not scheduled in accordance with Defendant Luscavage's representations, the failure to schedule the appointment at most exhibits negligence, which is insufficient to state a cognizable Eighth Amendment claim.

Overall, this Court finds no allegation in the second amended complaint that would support even an inference that the medical treatment Plaintiff received amounted to deliberate indifference to a serious medical need. Rather, the facts contained in Plaintiff's second amended complaint and the exhibits attached to the second amended complaint reveal remarkable attentiveness on the part of these Medical Defendants. In as much as Plaintiff merely disagrees

---

[11] The Court notes that Plaintiff submitted a request slip dated May 20, 2013, wherein he requests the status of his hearing test. (Doc. 64-1, at 6). Based upon the nature of Plaintiff's request and the response to this request slip, it would appear as though Plaintiff received the hearing test he desired.

with the independent medical judgment of the Medical Defendants, he has failed to allege facts in accordance with the Eighth Amendment medical care standard set forth above. Accordingly, this Court recommends that Plaintiff's Eighth Amendment claims against all three Medical Defendants be dismissed with prejudice, as Plaintiff has alleged no set of facts in support of his claim that would entitle him to relief.

C. CLAIMS AGAINST WEXFORD HEALTH NETWORK

According to Plaintiff, Wexford Health Network is a private corporation that has been contracted to provide medical care to inmates at SCI-Coal Township. (Doc. 64). Wexford Health Network is the alleged employer of the Medical Defendants. (Doc. 64). In his second amended complaint, Plaintiff reasserts his allegations that Wexford Health Network "failed to properly train and supervise their employees or agents [and] failed to accommodate the Plaintiff['s] needs." (Doc. 64, at 22).

"[A]lthough a private corporation offering medical services to inmates cannot be held liable for an alleged § 1983 violation under a theory of *respondeat superior*, it can be held liable for a policy or custom that demonstrates deliberate indifference." *Francis v. Carroll*, 659 F. Supp. 2d 619, 625–26 (D. Del. 2009) (internal quotation marks omitted). *See generally Monell v. Dep't of Social Servs. of N.Y.*, 436 U.S. 658 (1978) (subjecting municipalities to liability for policies or customs that cause constitutional deprivations); *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 584 (3d Cir. 2003) (applying *Monell* to a private company providing medical services to inmates). Thus, to state a claim against Wexford Health Network, the Plaintiff must allege that there was a relevant Wexford Health Network policy or custom, and that this policy or custom caused the constitutional violation he alleges. *See Natale*, 318 F.3d at 583–84.

- 23 -

Here, the Plaintiff fails to identify the causal link between the alleged policy or custom and any constitutional violation. *See Lopez v. Sacramento*, No. 2:04-CV-2009, 2006 WL 1652694, at *5 (E.D. Cal. June 14, 2006); *Springer v. Phila.*, No. 87-4292, 1988 WL 62167, at *1 (E.D. Pa. 1988). More importantly, having failed to state a cognizable constitutional claim against any of the individual Medical Defendants, the Plaintiff has failed to state a claim against Wexford Health Network under *Monell* as well. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) ("If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have authorized the use of constitutionally excessive force is quite beside the point."); *see Deninno v. Municipality of Penn Hills*, 269 F. App'x 153, 158 (3d Cir. 2008) (not precedential).

Accordingly, the Plaintiff has failed to state a claim against Wexford Health Network, and thus, it is recommended that the claims against this Defendant be dismissed with prejudice.

## IV. LEAVE TO AMEND

The Third Circuit has acknowledged that a district court has "substantial leeway in deciding whether to grant leave to amend." *Lake v. Arnold*, 232 F.3d 360, 373 (3d Cir.2000). "Denial of leave to amend a complaint is especially appropriate where a party has already been given the opportunity to amend the complaint." *In re Avandia Mktg., Sales Practices & Products Liab. Litig.*, 564 F. App'x 672, 673 (3d Cir. 2014) (not precedential) (citing *Lake*, 232 F.3d at 373 ("[W]e are inclined to give the District Court even broader discretion when, as here, the court has already granted the requesting party an opportunity to amend its complaint.")). Here, this Court afforded Plaintiff leave to amend his pleadings following dismissal of his amended complaint to properly state a claim for which relief can be granted, and outlined for Plaintiff the

liberal standards of pleading to which Plaintiff would be required to conform. Despite the Court's alerting Plaintiff to the deficiencies in his pleadings and granting him leave to amend, Plaintiff failed to cure the pleading's deficiencies. More importantly, it is clear from the exhibits attached to Plaintiff's second amended complaint that Plaintiff could allege no additional factual allegations that would entitle him to relief. Thus, the Court submits that the exercise of its discretion calls for denying Plaintiff leave to file a third amended complaint, as permitting him to take another "bite at the apple" to assert a cognizable claim would be futile. Accordingly, it is respectfully recommended that Plaintiff not be granted any further leave to amend his complaint.

## V.    RECOMMENDATION

Based on the foregoing, it is recommended that:

1. Plaintiff's second amended complaint (Doc. 64) be **DISMISSED WITH PREJUDICE**; and

2. The Clerk be directed to **CLOSE** this case.

**BY THE COURT:**

Dated: July 8, 2016                           *s/ Karoline Mehalchick*

**KAROLINE MEHALCHICK**
**United States Magistrate Judge**

- 25 -

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

RICHARD ALAN MCANULTY,

|  |  |
|---|---|
| Plaintiff | CIVIL ACTION NO. 3:13-CV-03104 |
| v. | |
| SUPT. VINCENT MOONEY, et al., | (CAPUTO, J.) |
| | (MEHALCHICK, M.J.) |
| Defendants | |

<u>**NOTICE**</u>

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing **Report and Recommendation** dated **July 8, 2016**.

Any party may obtain a review of the Report and Recommendation pursuant to Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636(b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

**Dated: July 8, 2016**

*s/ Karoline Mehalchick*
**KAROLINE MEHALCHICK**
**United States Magistrate Judge**