**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| RICHARD ALAN McANULTY, | |
| Plaintiff, | CIVIL ACTION NO. 3:13-CV-03104 |
| v. | (JUDGE CAPUTO) |
| SUPT. VINCENT MOONEY, et al., | (MAGISTRATE JUDGE MEHALCHICK) |
| Defendants. | |

**MEMORANDUM**

Presently before me is the Report and Recommendation of Magistrate Judge Mehalchick (Doc. 65) regarding Plaintiff Richard Alan McAnulty's Second Amended Complaint (Doc. 64). Because Plaintiff has failed to adequately state a claim for relief, the Report and Recommendation will be adopted in its entirety and the Complaint will be dismissed with prejudice.

**I. Background**

On December 30, 2013, Plaintiff Richard Alan McAnulty, who is currently incarcerated at the State Correctional Institution in Coal Township, Pennsylvania, initiated this section 1983 civil rights action by filing a *pro se* complaint alleging claims against several Department of Corrections ("DOC") employees, the prison's contracted medical provider, and three (3) of its employees. (Doc. 1.) An amended complaint was subsequently filed (Doc. 19), which the Clerk of Court inadvertently docketed as a new civil action. *See McAnulty v. Mooney et al.*, 3:14-CV-0622. On April 3, 2014, the Clerk of Court was directed to consolidate both actions, as both complaints involved common questions of law and fact. (Doc. 18.) In his Amended Complaint, Plaintiff alleged that (1) Superintendent Vincent Mooney, former Superintendent David A. Varano, Deputy Superintendents Michael Miller and Anthony Luscavage, Health Care Administrator Kathryn McCarty, Registered Nurse Supervisor Donna Dressler, Unit Manager Charles Custer,

Grievance Coordinator Trish Kelley, Corrections Officer Shultz, and Counselor D. Picarelli (the "DOC Defendants"); (2) Wexford Health Network; and (3) Dr. Marc Landsberg, Dr. Alan Popick, and Physician Assistant Jennifer Daya (the "Medical Defendants") failed to provide proper medical care for his chronic and ongoing illnesses, including diabetes, high blood pressure, cervical pain, hearing loss, and fibromyalgia, in violation of the Eighth and Fourteenth Amendments. (Doc. 19.) Specifically, Plaintiff challenged Defendants' failure to refill his prescriptions, schedule follow-up appointments, maintain accurate medical records, provide him with properly fitting diabetic shoes and socks, issue an Inmate Disability Accommodations Request Form, respond to his request for information pertaining to a new procedure regarding chronic medications, respond to his request for a new mattress. Plaintiff also contested the refusal of Defendants to accommodate his non-medical requests, such as allowing him additional time in the law library, assisting him with locating a confiscated storage box containing legal materials, facilitating a conference call with the Department of Justice, failing to act upon repeated requests to add visitors, and mailing various legal documents via certified mail. Several motions to dismiss were subsequently filed and on July 21, 2015, Magistrate Judge Mehalchick issued a Report & Recommendation (Doc. 51), recommending that Plaintiff's Complaint be dismissed without prejudice, after which, objections and responses thereto were filed (Docs. 57-59.)

On January 4, 2016, I entered a Memorandum and Order adopting in part and rejecting in part Magistrate Judge Mehalchick's Report and Recommendation. (Docs. 60 & 61.) Specifically, I adopted Magistrate Judge Mehalchick's recommendation to dismiss Plaintiff's claims against the DOC Defendants, Defendant Daya, and Defendant Wexford Health Network, as well as the deliberate indifference claim against Defendants Landsberg and Popick for their failure to maintain updated medical records for Plaintiff and their failure to order proper follow-up appointments to evaluate Plaintiff's condition. However, I rejected

the recommendation to dismiss Plaintiff's deliberate indifference claim against Defendants Landsberg and Popick based on their failure to reorder required medications for Plaintiff because the recommendation to dismiss was based on an improper consideration of documents outside of the Complaint.[1]

On March 11, 2016, Plaintiff filed his Second Amended Complaint, as well as several exhibits that shed light on his claims. (Doc. 64.) In his Second Amended Complaint, Plaintiff asserts violations of his First, Eighth, and Fourteenth Amendment rights under the United States Constitution resulting from Defendants' failure to provide proper medical care for his chronic and ongoing illnesses, including diabetes, high blood pressure, cervical pain, hearing loss, and fibromyalgia. As noted by Magistrate Judge Mehalchick, Plaintiff has merely repeated the factual allegations asserted against the exact same Defendants contained within his First Amended Complaint, though in a slightly condensed form and in a slightly different order. After conducting a statutory screening review of the Second Amended Complaint in accordance with 28 U.S.C. § 1915(e)(2)(B)(ii), 28 U.S.C. § 1915A(b)(1), and 42 U.S.C. § 1997e(c)(1), Magistrate Judge Mehalchick issued the instant Report and Recommendation (Doc. 65), recommending that Plaintiff's Second Amended Complaint be dismissed with prejudice. On July 25, 2016, Plaintiff filed his objections to the Report & Recommendation. (Doc. 66.) However, he does not address any of Magistrate Judge Mehalchick's reasoning for dismissal–he simply asserts that Defendants continue to lie and falsify records and that Magistrate Judge Mehalchick "believes all inmates to be sub-human." On July 29, 2016, the DOC Defendants filed a brief in opposition to Plaintiff's objections. (Doc. 67.) Magistrate Judge Mehalchick's Report and Recommendation, Plaintiff's objections, and the DOC Defendants' response thereto are now ripe for review.

---

[1] Magistrate Judge Mehalchick relied on documents that were attached as exhibits to the initial complaint, but not the Amended Complaint, which was the operative complaint at the time. Therefore, those documents were not properly before the Court.

**II. Legal Standards**

A.  **Legal Standard in Reviewing a Report and Recommendation**

Where objections to the Magistrate Judge's Report and Recommendation are filed, the district court must conduct a *de novo* review of the contested portions of the report.  *Sample v. Diecks*, 885 F.2d 1099, 1106 n.3 (3d Cir.1989) (citing 28 U.S.C. § 636(b)(1)(C)). However, this only applies to the extent that a party's objections are both timely and specific.  *Goney v. Clark*, 749 F.2d 5, 6–7 (3d Cir.1984).  In conducting a *de novo review*, the court may accept, reject, or modify, in whole or in part, the factual findings or legal conclusions of the magistrate judge.  28 U.S.C. § 636(b)(1); *Owens v. Beard*, 829 F. Supp. 736, 738 (M.D. Pa. 1993).  Although the review is *de novo*, the law permits the court to rely on the recommendations of the magistrate judge to the extent it deems proper.  *United States v. Raddatz*, 447 U.S. 667, 675–76 (1980); *Goney*, 749 F.2d at 7.  Uncontested portions of the report may be reviewed at a standard determined by the district court.  *See Thomas v. Arn*, 474 U.S. 140, 154 (1985).  At the very least, the court should review uncontested portions for clear error or manifest injustice.  *Cruz v. Chater*, 990 F. Supp. 375, 376–77 (M.D. Pa. 1998).

B.  **Legal Standard for Screening a Civil Complaint**

Pursuant to 28 U.S.C. § 1915A, courts are obligated to screen a civil complaint in which a prisoner is seeking redress from a governmental entity or an officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  A complaint must be dismissed if it "fails to state a claim upon which relief may be granted."  28 U.S.C. § 1915A(b)(1).  In performing this screening function, a district court applies the same standard it applies to motions to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  *Mitchell v. Dodrill*, 696 F. Supp. 2d 454, 471 (M.D. Pa. 2010).

A pleading that states a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  The statement required by Rule 8(a)(2) must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Erickson v. Pardus*, 551 U.S. 89, 93

(2007) (per curiam) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Pleadings and other submissions by *pro se* litigants are subject to liberal construction. *Baker v. Younkin*, 529 F. App'x 114, 115 (3d Cir. 2013). All well-pleaded factual allegations will be accepted as true and all reasonable inferences will be drawn in the plaintiff's favor. *Id.* Although allegations of a *pro se* complaint are held to less stringent standards than formal pleadings drafted by lawyers, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), a *pro se* complaint must still "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. *Id.* at 664. Dismissal is appropriate only if, accepting as true all of the facts alleged in the complaint, a plaintiff has not pleaded "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. This means that there must be enough factual allegations "to raise a reasonable expectation that discovery will reveal evidence of" each necessary element. *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (citing *Twombly*, 550 U.S. at 556). The plausibility standard is not akin to a "probability requirement," but asks for more than a sheer possibility that a defendant has acted unlawfully. *Iqbal*, 556 U.S. at 678. A court need not assume that the plaintiff can prove facts that were not alleged in the complaint, *see City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 263 & n.13 (3d Cir. 1998), or credit a complaint's "bald assertions" or "legal conclusions," *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (citation and internal quotation marks omitted). In deciding whether to dismiss a case, a court should consider the complaint, exhibits attached to the complaint, matters of public record, and undisputedly authentic documents if the complainant's claims are based upon these documents. *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citation omitted).

### III. Discussion

Plaintiff brings claims under 42 U.S.C. § 1983, which provides that every person who, under color of state law, subjects any citizen of the United States to the deprivation

of any federal right shall be liable to the party injured.  In order to state a claim under this statute, Plaintiff must show that:  (1) the conduct complained of was committed by a person acting under color of state law, and (2) the conduct deprived him of rights, privileges, or immunities secured by the Constitution or the laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981); *Groman v. Twp. of Manalapan*, 47 F.3d 628, 638 (3d Cir. 1995).

**A.    DOC Defendants**

    **1.    Lack of Personal Involvement**

Here, Plaintiff alleges that the DOC Defendants failed to intervene or respond appropriately to Plaintiff's numerous request slips and grievances.  However, Plaintiff has failed to allege that any of these defendants had "personal involvement" in the alleged wrongs to be liable.  *Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007) (holding that defendants "cannot be held responsible for a constitutional violation which he or she neither participated in nor approved") (citations omitted).  Personal involvement can be demonstrated through allegations of "personal direction or of actual knowledge and acquiescence."  *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).  Neither the filing of a grievance or participation in the "after-the-fact" review of a grievance are sufficient to establish personal involvement.  *See, e.g.*, *Brooks v. Beard*, 167 F. App'x 923, 925 (3d Cir. 2006) (explaining that allegations that prison officials and administrators responded inappropriately to inmate's later-filed grievances fail to establish involvement in the underlying deprivation).  Additionally, inmates "do not have a constitutional right to a prison grievance system."  *Arroyo v. Li*, No. 3:cv-13-1506, 2014 WL 4294506, at *3 (M.D. Pa. Aug. 28, 2014) (citations omitted).  Therefore, "any attempt by [p]laintiff to establish liability against [a prison official or] health care administrator solely based upon the substance or lack of response to his institutional grievances does not by itself support a constitutional due process claim."  *Id.* (citation omitted); *see also Alexander v. Gennarini*, 144 F. App'x 924, 925 (3d Cir. 2005) (affirming dismissal of Section 1983 claims because the allegations "merely asserted [the defendants']

involvement in the post-incident grievance process," which was not a basis for Section 1983 liability); *Okey v. Strebig*, 531 F. App'x 212, 215 (3d Cir. 2013), *cert denied*, 134 S.Ct. 446 (2013) ("The failure of a prison official to provide a favorable response to an inmate grievance is not a federal constitutional violation.") (citations omitted).

Here, Plaintiff has offered no facts demonstrating the personal involvement of any of the DOC Defendants.  Rather, he relies solely on his allegations that the DOC Defendants ignored or responded inappropriately to his request slips and grievances.  These allegations fail to establish personal involvement on the part of any of the DOC Defendant.  Accordingly, these claims will be dismissed.

**2. Refusal to Accommodate Medical Requests**

Even assuming Plaintiff had properly alleged personal involvement on the part of the DOC Defendants, which he has not, Plaintiff has failed to allege that they were deliberately indifferent to his medical needs through their awareness of his medical conditions or through a failure to secure him proper treatment.  If a prisoner is being treated by medical personnel, which Plaintiff was, then non-medical officials and healthcare administrators, like the DOC Defendants, cannot be considered deliberately indifferent for failing to intervene in the medical treatment or responding directly to the prisoner's medical complaints.  *See Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993) (explaining that prison administrators cannot be deliberately indifferent "simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor").  "Prison officials who are not physicians are entitled to defer to the medical judgment of staff physicians, . . . and an administrator does not become responsible for the inmate's medical treatment simply by virtue of reviewing an inmate grievance."  *Smith v. O'Boyle*, 251 F. App'x 87, 89 (3d Cir. 2007).  Accordingly, Plaintiff's claims against the DOC Defendants based on an alleged failure to accommodate Plaintiff's medical requests will be dismissed.

### 3. Plaintiff's Claims Against the DOC Defendants Unrelated to his Medical Treatment

Plaintiff also reasserts his constitutional claims against a number of the DOC Defendants for failing to accommodate his non-medical requests and engaging in misconduct unrelated to his medical treatment.  Specifically, he alleges that Defendants failed to maintain an accurate visitors list, ignored Plaintiff's requests to facilitate a telephone conference call with the United States Department of Justice, conducted conversations with other inmates about their release in Plaintiff's presence, refused to transfer him to the prison of his choosing, declined to send his legal documents via certified mail, rejected his demand for an updated copy of the personnel directory, confiscated his legal storage box, denied his requests for a replacement mattress, and verbally harassed him.  However, as explained in my previous Memorandum, none of these allegations give rise to a constitutional violation. (Doc. 60, at 9-11.)  *See also, e.g.*, *Neumeyer v. Beard*, 301 F. Supp. 2d 349, 351 (M.D. Pa. 2004), *aff'd*, 421 F.3d 210 (3d Cir. 2005) (explaining that "there is not a constitutional right to visitation for convicted prisoners, their family and spouses"); *Lyons v. Sec'y of Dep't of Corr.*, 445 F. App'x 461, 463 (3d Cir. 2011) (affirming dismissal of prisoner's claim because confiscation of prisoner's legal materials or any other deprivation of inmate property fails to state a cognizable due process claim if there is a grievance process in place); *Crawford v. While*, No. 14-cv-1682, 2014 WL 4639933, at *6 (M.D. Pa. Sept. 16, 2014 ("[P]risoners have no inherent constitutional right to placement in any particular prison, to any security classification, or to any particular housing assignment.") (citation omitted); *Snoderly v. Osborne*, No. 4:08-cv-P149-M, 2010 WL 816795, at *2 (W.D. Ky. Mar. 4, 2010) ("There is no constitutional right to send mail certified or return receipt requested.").  Because Plaintiff has failed to correct the deficiencies in his complaint that were previously identified to him and continues to allege facts that fail to give rise to a constitutional violation, these claims will again be dismissed.

**B.     Medical Defendants**

Plaintiff again alleges that the Medical Defendants–Doctors Landsberg and Popick and Physician Assistant Daya–were deliberately indifferent to his "chronic and ongoing geriatric illnesses" in violation of the Eighth *and* Fourteenth Amendments.  As explained in my previous Memorandum, however, asserting claims under both the Eighth and Fourteenth Amendments based on the same conduct is improper.  (Doc. 60, at 14-15 (citing *Sadelmyer v. Peltzer*, No. 2:12-cv-1785, 2013 WL 4766517, at *6 (W.D. Pa. Sept. 4, 2013) ("Because the Eighth Amendment provides an explicit source of protection for deliberate indifference to serious medical needs, Plaintiff's claim is preempted by the Eighth Amendment and should not be analyzed as a substantive due process claim under the Fourteenth Amendment.")).)  Therefore, Plaintiff's Fourteenth Amendment claim again fails as a matter of law and I will again analyze Plaintiff's claim under the Eighth Amendment.

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain," which includes "deliberate indifference to serious medical needs of prisoners."  *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976) (finding that a failure to provide adequate medical care constitutes cruel and unusual punishment).  To state a violation of the constitutional right to adequate medical care under the Eighth Amendment, Plaintiff must allege (1) a serious medical need and (2) acts or omissions by prison officials that indicate deliberate indifference to that need.  *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003).  A serious medical need is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a layperson would recognize the need for a doctor's attention.  *Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987).  Here, Plaintiff alleges that he suffers from major cervical damage, fibromyalgia, high blood pressure, diabetes, hearing loss and chronic geriatric illnesses.  I will assume that Plaintiff has a serious medical need.  Therefore, Plaintiff's claim will turn on whether the Medical Defendants exhibited "deliberate indifference" toward his serious medical needs.

Deliberate indifference may be manifested by an "intentional refusal to provide

medical care, delayed medical treatment for non-medical reasons, a denial of prescribed medical treatment, or a denial of reasonable requests for treatment that results in suffering or risk of injury." *Beckett v. Dep't of Corr.*, No. 10-0050, 2011 WL 4830787, at *11 (M.D. Pa. Oct. 12, 2011). However, an "inadvertent failure to provide adequate medical care" does ***not*** constitute "deliberate indifference" or an "unnecessary and wanton infliction of pain" in violation of the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976). Therefore, a complaint that a prison doctor has been negligent in diagnosing or treating a medical condition fails to state a claim for medical mistreatment under the Eighth Amendment. *Id.* at 106. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. *Id.* As long as a physician exercises professional judgment, his behavior will not violate a prisoner's constitutional rights. *Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990) (citing *Youngberg v. Romeo*, 457 U.S. 307, 322-23 (1982)). Additionally, a mere difference of opinion between the prison medical staff and the inmate regarding the diagnosis or treatment received by the inmate does not constitute deliberate indifference. *Lanzaro*, 834 F.2d at 346; *Farmer v. Carlson*, 685 F. Supp. 1335, 1339 (M.D. Pa. 1988). Moreover, "prison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners." *Durmer*, 991 F.2d at 67; *see, e.g., Baker*, 529 F. App'x, at 115-16 (prison doctor was not deliberately indifferent in refusing to accommodate prisoner's request for a bi-pap machine with a humidifier even though he suffered from sleep apnea); *Winslow*, 406 F. App'x, at 674-76 (prison doctors were not deliberately indifferent to prisoner's serious medical needs by deciding to forego surgery in treatment of prisoner's hernia). With this in mind, I will proceed to Plaintiff's specific claims.

    **1.**    **Doctors Landsberg and Popick**

Here, Plaintiff alleges that Doctors Landsberg and Popick were deliberately indifferent to his serious medical needs based on their failures to (1) reorder required chronic medications for Plaintiff; (2) maintain updated medical records on Plaintiff; and

(3) order proper follow-up appointments to evaluate Plaintiff's condition. However, these claims fail to rise to the level of deliberate indifference, as they are not supported by the grievances and request slips that Plaintiff attached as exhibits to his Second Amended Complaint.

For example, Plaintiff claims that Defendants refused to provide him with prescription and over-the-counter medication refills. However, the grievances and request slips attached to his Complaint demonstrate that Defendants prescribed the requested medications to Plaintiff and that Plaintiff was clearly aware of and yet failed to comply with the prison protocol requiring inmates to submit a request for specific chronic medication when fewer than seven (7) pills remained in the prescription. (Doc. 64-1, at 8-9.) Thus, Plaintiff fails to demonstrate that these physicians "acted intentionally to withhold from him his prescribed medication[s] or [were] in any way responsible for the delay in obtaining a refill of his medication." *Baskerville v. Blot*, 224 F. Supp. 2d 723, 735 (S.D.N.Y. 2002). Accordingly, Plaintiff's deliberate indifference claims based on this failure to automatically prescribe chronic and over-the-counter refills lack merit given Plaintiff's failure to comply with prison protocol requiring him to submit a sick call request for his chronic medications.

Plaintiff's allegation that he was deprived of medical care when Defendants failed to schedule him a follow-up appointment also fails to constitute deliberate indifference to a serious medical need. Specifically, Plaintiff fails to assert any adverse consequences resulting from any purported delay in scheduling a follow-up appointment. In addition, the exhibits attached to his complaint belie any claim that Defendants acted with deliberate indifference in their alleged failure to schedule him for a follow-up appointment, as the exhibits reflect that Plaintiff was provided continued access to medical care. (*See, e.g.*, Doc. 64, at 44, & 49-50; Doc. 64-1, at 6.) Upon reviewing these exhibits, Plaintiff appears to have received numerous appointments, examinations, and treatments for his medical diagnoses, and was never prevented from reporting to sick call when he had a specific complaint. Accordingly, these claims will be dismissed.

Plaintiff also alleges that Doctors Landsberg and Popick failed to maintain updated records on Plaintiff and failed to order proper follow-up appointments to evaluate Plaintiff's condition. However, Plaintiff again fails to set forth any specific allegations to support his conclusory deliberate indifference claim with respect to his medical records. He also fails to show that he sustained any sort of serious physical injury as a result of the purported inaccuracies in his records. Accordingly, these claims will again be dismissed.

### 2. Physician Assistant J. Daya

Plaintiff alleges that Defendant Physician Assistant Daya was deliberately indifferent to his medical needs because she falsified a grievance response by representing that a previously conducted audiogram was normal, failed to schedule Plaintiff for an evaluation to assess the fit of his diabetic shoes, and denied Plaintiff's request for diabetic socks.

First, Plaintiff's allegation regarding a falsified grievance response pertaining to an audiogram does not rise to the level of deliberate indifference proscribed by the Eighth Amendment because he failed to allege how this misrepresentation resulted in the worsening of his condition. *See Geib v. James*, No. 3:cv-04-1923, 2005 WL 2453961, at *4 (M.D. Pa. Oct. 4, 2005) (granting motion to dismiss deliberate indifference claim against physician assistant who allegedly misstated facts in response to one of the plaintiff's grievances because the plaintiff failed to allege how the misstatement impeded or altered his medical treatment). Therefore, I again cannot conclude that this falsified grievance response constitutes deliberate indifference to a serious medical need.

Second, Plaintiff claims that Daya failed to schedule Plaintiff for an evaluation to assess the fit of his diabetic shoes and denied Plaintiff's request for diabetic socks. However, this fails to state a claim for deliberate indifference because Plaintiff has failed to allege that Daya acted with the requisite intent. Specifically, Plaintiff has failed to allege that Daya intentionally refused to schedule Plaintiff for an evaluation or acted with reckless disregard for Plaintiff's need for diabetic shoes or socks. *See, e.g.*, *Baker*, 529

F. App'x at 115 (explaining the requisite intent for deliberate indifference claims). At best, Plaintiff has alleged that Daya was negligent in failing to schedule Plaintiff an evaluation. However, this fails to state a claim for deliberate indifference. *See Estelle,* 429 U.S. at 104-08 (explaining that mere negligence fails to satisfy the deliberate indifference standard).

Additionally, Plaintiff failed to allege how Daya's failure to schedule Plaintiff for an evaluation to assess the fit of his diabetic shoes or denial of his request for diabetic socks affected his medical treatment or worsened his condition. There is no allegation supporting Plaintiff's claim that an evaluation for diabetic shoes or diabetic socks was necessary for his medical treatment or that the absence of these diabetic shoes or socks caused unnecessary and wanton infliction of pain.

Moreover, Plaintiff's mere disagreement with Defendant Daya over his need for diabetic socks does not establish deliberate indifference. *See Baker v. Younkin*, 529 F. App'x 114-16 (3d Cir. 2013) (affirming a Magistrate Judge's order granting a health care administrator and medical doctor's motions to dismiss a prisoner's deliberate indifference claim for this same reason); *see also Winslow v. Prison Health Servs.*, 406 F. App'x 671, 675-76 (3d Cir. 2011) (explaining that prison doctors did not act with deliberate indifference to prisoner's medical needs by forgoing surgery in treatment of prisoner's hernia); *Brandner v. First Corr. Med.*, 167 F. App'x 328, 329-30 (3d Cir. 2006) (explaining that a failure to treat pain and swelling in prisoner's knee, including a failure to order crutches, a knee brace, or perform an MRI, failed to constitute deliberate indifference to inmate's serious medical needs and affirming dismissal). Similarly, here, Plaintiff's disagreement over the medical assessment of his need for diabetic socks fails to state a claim for deliberate indifference. Absent any allegation that Daya recklessly disregarded a "substantial risk of serious harm" or "intentionally" denied Plaintiff's request, Plaintiff has failed to state a cognizable claim under the Eighth Amendment. *Baker*, 529 F. App'x at 115-16. Here, like in *Baker*, Plaintiff "has received some medical attention" and the dispute is simply over the "adequacy of the treatment." *Id.* at 115.

Therefore, I will not "second guess" the medical judgments made by the prison staff. *Id.* Because Plaintiff has alleged no set of facts in support of his claims against all three (3) Medical Defendants, all of these claims will be dismissed.

### 3. Wexford Health Network

Plaintiff also asserts claims against Wexford Health Network ("Wexford"), which was contracted for medical services at the Pennsylvania State Correctional Institution at Coal Township. Wexford cannot be held responsible for the acts of its employees under a theory of *respondeat superior* or vicarious liability. *Natale*, 318 F.3d at 583-84; *see generally Monell v. Dep't of Social Servs. of N.Y.*, 436 U.S. 658 (1978) (subjecting municipalities to liability for policies or customs that cause constitutional deprivations). Thus, in order for Wexford to be held liable, Plaintiff must allege that there was a relevant Wexford policy or custom, and that the policy caused the constitutional violations he alleges. *Natale*, 318 F.3d at 583-84.

Here, Plaintiff has failed to allege any facts to support his conclusory allegation that there was any custom, policy, or procedure that caused his constitutional rights to be violated. Indeed, having failed to state a cognizable constitutional claim against any of the individual Medical Defendants, Plaintiff has failed to state a claim against Wexford under *Monell* as well. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) ("If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have authorized the use of constitutionally excessive force is quite beside the point."). Accordingly, Plaintiff has failed to state a claim against Wexford and all claims against Wexford will be dismissed.

## C. Leave to Amend

The Third Circuit has acknowledged that a district court has "substantial leeway in deciding whether to grant leave to amend." *Lake v. Arnold*, 232 F.3d 360, 373 (3d Cir. 2000). "Denial of leave to amend a complaint is especially appropriate where a party has already been given the opportunity to amend the complaint." *In re Avandia Mktg. Sales Practices & Products Liab. Litig.*, 564 F. App'x 672, 673 (3d Cir. 2014) ("[W]e are

inclined to give the District Court even broader discretion when, as here, the court has already granted the requesting party an opportunity to amend its complaint.") (citation omitted).  Here, Plaintiff was already afforded leave to amend his pleadings following dismissal of his Amended Complaint for failure to state a claim upon which relief may be granted.  Plaintiff was also informed of the liberal pleading standards to which he would be required to conform as well as the legal deficiencies of his previous pleadings.  However, Plaintiff failed to cure these deficiencies highlighted to him.  Most importantly, however, it is clear from the exhibits attached to Plaintiff's Second Amended Complaint that he could allege no additional facts that would entitle him to relief.  Therefore, Plaintiff will not be granted any further leave to amend his Complaint.

## IV. Conclusion

For the above stated reasons, I will adopt Magistrate Judge Mehalchick's Report and Recommendation in its entirety.  Plaintiff's Second Amended Complaint will be dismissed with prejudice.

An appropriate order follows.


August 11, 2016                                         /s/ A. Richard Caputo
Date                                                          A. Richard Caputo
                                                                 United States District Judge